## THE PEOPLE *against* NORTON.

The late court of chancery had power by its general authority, independent of any special statute, to remove a trustee on good cause shown, and to substitute another in his stead.

Whether such removal and appointment, made upon petition, without bill, was regular or not, the surety of the substituted trustee can make no objection on that ground, in a suit upon the bond given to secure the faithful execution of the trust.

Neither can the surety object, in such an action, that some of the persons interested in the trust estate were not parties in the proceedings for the appointment of a new trustee.

The trustee having obtained the trust estate by virtue of the appointment, neither he nor his surety can avoid accounting for it by reason of any irregularity in the proceedings.

Where the plaintiffs on a trial before a referee read as evidence of certain facts, without objection, a part of the defendant's answer, those facts were properly regarded by the referee as established, although they were denied by the reply, and the answer could not, therefore, if objected to, have been read as evidence of them.

Where a bond of a trustee and his surety was given to "the people of the State of New-York," for the benefit of those interested in the trust estate, an action on the bond was properly brought in the name of the people, they being "trustees of an express trust," within the meaning of § 113 of the Code of Procedure.

Where the trust estate consisted of a house and lot, subject to the lien of a mortgage, and the trustee, for his own convenience, and not for the advantage of the estate, sold the property subject to the mortgage for less than its value, and the property on a foreclosure sold for less than the sum due on the mortgage; it was *Held* that the surety of the trustee, after the death of the latter, was liable on his bond for the surplus value of the property at the time of the trustee's sale, beyond the amount of the incumbrance, together with interest on such surplus.

THIS action was brought in the superior court of New-York on a bond dated October 21, 1844, executed by Henry Lynch as principal and John L. Norton as surety, in the penalty of $10,000, to the people of the State of New-York. The bond recites that on the 10th of November, 1826, Norton transferred to Robert White and Edward A. Nicoll certain bonds and mortgages in trust for Mary O. Lynch, the wife of Henry Lynch; and in case she should die in the lifetime of her husband without making any disposition of the trust property by will or by instrument in the nature of a will, the trustees were to pay, appropriate and divide one equal half part of the trust estate to Henry Lynch, the husband, and the other half to the issue of Mary Lynch, the wife; that Mary Lynch died without having made any disposition of the trust estate, leaving her husband surviving, and six children, of whom Mary, the wife of William C. Bolton was one, and Adele, the wife of William Watson, was another.

The bond further recited that the trust estate then consisted of a bond and mortgage to secure the payment of $10,000 and the interest thereof, one moiety of which by the terms of the aforesaid trust belonged to Henry Lynch or his assigns, and the other moiety thereof to the said six children of Mary Lynch deceased; that the trustees, White and Nicoll, had presented their petition to the vice-chancellor of the first circuit, praying to be relieved from the trust, and that such proceedings had been thereupon had, that an order had been duly made substituting and appointing Henry Lynch in the place and stead of White and Nicoll, upon his executing and filing a bond with sufficient surety for the faithful performance of his duty as such trustee. The condition of the bond was that Henry Lynch should faithfully perform his said trust, and should observe all such orders as should be made by the court of chancery in the premises in relation to the said trust. Mary Lynch, his wife, died before her husband became the

trustee. Henry Lynch died insolvent in 1846, without leaving a will.

The cause was tried before a referee, who reported that $833.33 was due to the plaintiffs, on the ground that the trust property had been sold by Lynch and the defendant for $2500, and that the share of Mrs. Bolton and Mrs. Watson, for whose benefit the action was brought, amounted to the first mentioned sum. The court at general term sustained this report, and the defendant appealed. Other facts in the case are sufficiently stated in the opinion.

*N. Hill, Jr.,* for the appellant.

*W. Watson* for the respondents.

RUGGLES, Ch. J., delivered the opinion of the court.

The court of chancery had general jurisdiction of all cases of trust; and had the power by its general authority, independent of any statute, to displace a trustee on good cause shown, and to substitute another in his stead. It is said that this must in all cases, according to the course and practice of that court, be done by bill and not upon petition. But a departure from the usual practice of the court in doing an act which the court has authority to do, does not render the act void. It may be irregular or erroneous, and upon a direct proceeding may be set aside or reversed; but its validity cannot be questioned in a collateral action.

It does not appear that the court of chancery, in substituting Lynch as trustee in the place of White and Nicoll, acted or professed to act by authority of the statute in relation to trusts of real estate, or otherwise than by virtue of its general jurisdiction in matters of trust. The true point of the objection to the validity of the change of the trustee seems to be this: that it does not appear by the recital in the bond that the *cestuis que trust* were parties to or had notice of the proceeding. But this is an objection

which neither the trustee nor his surety can be allowed to make. Lynch got possession of the trust estate under the proceeding by color of which he claimed to be trustee, and Norton voluntarily undertook as his surety that he should faithfully administer the trust. If the proceeding was irregular for want of notice to the children of Mrs. Lynch, they might object to it in a proper manner for that cause; but Lynch, after having obtained the property upon the pretence of being the trustee, cannot be permitted to deny his liability to account as such. The defendant, who volun tarily became his surety in order that he might take the trust property, is for a like reason precluded from denying his liability as surety. The order for changing the trustee and the bond given in pursuance of it must therefore be regarded as valid; and the defences in the answer which related to this point were properly overruled.

The next question is whether the bond can be prosecuted in the name of the people, or whether it must be sued in the names of those beneficially interested. According to the Code of 1849 (§ 111), "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in § 113." By § 113, "An executor or administrator, a trustee of an express trust, or a person authorized by statute, may sue without joining with him the persons for whose benefit the suit is prosecuted." The plaintiffs in this case were trustees of an express trust within the meaning of § 113. The duty of holding the bond for the benefit of the children of Mary Lynch appears plainly by the recitals in the bond itself. Money collected on the bond in the name of the people is collected for these children, and a court of equity directs it to be paid to them as a matter of course. This construction of the Code of 1849 is confirmed by the Code of 1851, in which, by an amend ment to § 113, it is declared that "a trustee of an express trust within the meaning of that section shall include a person with whom or in whose name a contract is made

for the benefit of another." The action therefore was rightly brought in the name of the people.

The next matter to be disposed of is the decision of the referee upon the motion for a nonsuit. The plaintiffs, on the hearing, read in evidence a portion of the answer, which appears to have been relied upon by the defendant as constituting one separate and entire defence to the action. The facts there stated were denied by the plaintiffs in their reply, and could not therefore have been received as evidence if they had been objected to by the defendant. No such objection, however, was made. In support of his motion for the nonsuit, the defendant insisted that upon this part of the answer and Bibby's evidence, the plaintiffs had no cause of action whatever against him. The question now is whether he was right in that position. I think he was mistaken.

The part of the answer in question states in substance that White and Nicoll while they were trustees, by the consent of Henry Lynch and wife, applied the whole of the trust fund in their hands in part payment for a house and lot known as No. 88 Prince-street, New-York, purchased for the benefit of Mary, the wife of Henry Lynch. That the deed for said house was at the request of Lynch and wife, and of White and Nicoll, taken in the name of the defendant Norton, for the benefit of the trust estate; but that the conveyance to Norton was subject to a mortgage of $11,000, and that the trust estate in which Lynch and his wife and children were interested, consisted, when Lynch was appointed trustee, of this house and lot subject to the mortgage above mentioned; and that this was the only trust property which passed to Henry Lynch by virtue of his appointment as trustee. That in 1848 the mortgage for $11,000 was foreclosed and the house and lot sold to G. G. Howland for a sum less than was due on the mortgage, leaving a deficiency of $300, for which there was a decree

against Norton personally, and that the trust estate was therefore all lost.

The testimony of Bibby, a witness introduced by the plaintiffs, is mainly consistent with this answer; but he states important facts which the answer wholly omits.

The answer, the documentary evidence and Bibby's testimony make out the following facts:

In 1837, while White and Nicoll were trustees, the trust fund, amounting to $10,000 and some interest thereon, was applied to the purchase from Gouverneur Bibby of the house and lot in Prince-street, the price of which was $26,000. It was purchased subject to a mortgage of $10,000, which was left upon it as an incumbrance, and counted as part of the purchase money. Bibby regarded the sale as made to Henry Lynch, but the conveyance was made to Norton, who held it for the benefit of the trust estate. In 1843 the mortgage for $10,000 was taken up and a new one executed by Norton to the executors of Laurent Salles for $11,000. What use was made of the difference between the two mortgages ($1000), does not appear. In October, 1844, Lynch was appointed the trustee and gave the bond for the performance of the trust with Norton as his surety. It is recited in this bond that the trust estate then consisted of a bond and mortgage for $10,000 and the interest thereof, one-half of which belonged to Henry Lynch, and the other half to the children of his wife. The bond is admitted in the first part of the defendant's answer by reference to the subsequent part in which it is set forth at large. It appears, however, in point of fact that there was no such bond and mortgage belonging to the trust estate, but that the trust estate, whatever it was, had been applied to the purchase of the house in Prince-street, before the bond of Lynch and Norton for the faithful performance of the trust was executed. On the 23d of May, 1845, Norton sold and conveyed the house and lot in Prince-street to Bibby for the

nominal consideration of one dollar, but in fact for $2500 over and above the amount due on the mortgage of $11,000 then remaining on the premises. The conveyance of the property was made subject to that mortgage. Lynch represented himself to be the owner of the house and lot, and that Norton with his assent could convey it. Lynch received the $2500. That he received it with Norton's assent is apparent from the fact, admitted in Norton's answer, that Norton held the title for the benefit of the trust estate of which Lynch was trustee. The conveyance by Norton to Bibby, and the payment by Bibby to Lynch of $2500 therefor, are material facts omitted in Norton's answer, but proved by the production of the deed and by Bibby's testimony. In July, 1846, the executors of Salles filed their bill for the foreclosure of their mortgage, and obtained their decree in November thereafter, and on the 4th of January, 1848, the property was sold for $12,600, which was less than the amount due on the decree. According to Bibby's evidence the property was worth $16,000, and the annual rent more than sufficient to pay the interest on the mortgage.

Upon these facts the denial of the motion for a nonsuit was undoubtedly right. Lynch, the trustee, had received $2500 of trust moneys for which he had not accounted, and two-sixths of that sum actually belonged to Mrs. Watson and Mrs. Bolton, for whose benefit the bond was prosecuted. The referee finally allowed the plaintiffs two-sixths of $5000, on the ground that the house and lot in Prince-street was sold for the personal advantage of Lynch the trustee, by Norton's assent and concurrence, and that the property was worth $5000 over and above the incumbrance. In this I think the referee was right; moreover no exception was taken to this allowance in regard to its amount, and no question can now be raised as to its propriety. If the case were to be re-tried on its true principles,

it seems to me that the recovery would be larger than the amount allowed by the referee.

The bond for the performance of the trust recites that at its date, in October, 1844, the trust estate consisted of a bond and mortgage for $10,000 and the interest thereof, half of which belonged to Henry Lynch, and the other half to the children of his wife. It is not perceived how the defendant could be permitted to deny the truth of this recital, and to set up that this trust property had previously been converted into a house and lot of which he held the title in his own name and as his own property, and which he had encumbered with the large mortgage, executed by himself, under which it was afterwards sold. It seems to me that he ought to have been held bound to account according to the condition of his bond for half of the $10,000 and interest.

The judgment below may therefore be affirmed without any danger of doing injustice to the defendant.

The whole court concurred.

Judgment affirmed.