JOHN M. EASTERLY, Respondent, *v.* WILLIAM C. BARBER et al., Appellants.

A trustee of a corporation organized under the general manufacturing act (chap. 40, Laws of 1848), cannot, as creditor of the corporation, maintain an action against his co-trustees under section 12 of said act, because of failure to make, publish and file an annual report.

The same rule applies to one who has acted as trustee, although not legally elected; he cannot repudiate his character as trustee and recover of those with whom he has acted.

One who has voluntarily assumed the character of trustee will not be permitted to deny it or to disavow his acts in that capacity, either as against his co-trustees or the *cestui que trust.*

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought against defendants as trustees of the " Stevenson Manufacturing Company," a corporation organized under the general manufacturing act, to recover a

debt due from the company to plaintiff, on the ground of an alleged omission to make, publish and file the annual report required by the twelfth section of said act.

The defence was that the plaintiff, when the debts were contracted, and when the default in making the report occurred, was one of the trustees of the company, and a co-trustee with the defendants.

At the trial evidence bearing upon the question of the trusteeship of the plaintiff was given substantially as follows: Wackman, one of the original trustees, in March and April, 1868, sold 200 shares of his stock to the plaintiff and the residue to another person, and ceased to act as trustee. No certificate of stock had been issued at this time. About May twentieth a certificate was made out to Wackman, who transferred it to the plaintiff, whereupon a new certificate was issued to him. Button, another of the original trustees and vice-president, sold all his stock to MacDougall before May 1, 1868. A certificate was issued to him about May twentieth. On May fifth there was a meeting of the stockholders, and MacDougall was elected a trustee in place of Button, and the plaintiff in place of Wackman. It appeared that Wackman did not act after this date. The plaintiff, after May fifth, acted as one of the trustees till the company ceased to do business in April or May, 1869.

After the evidence had closed, the defendant asked the court to hold, as matter of law, that the plaintiff was estopped as against the defendants Barber and Knight from setting up or claiming that he was not their co-trustee.

The court was also asked to decide that, on the facts of the case, the plaintiff was a co-trustees with the persons named. Both these requests were denied under exception.

The defendant then asked the court to hold that on the evidence it was a question for the jury whether the plaintiff was elected or appointed a trustee at the meeting of May fifth, and assented by his conduct to the appointment; and if they so find, that then he is to be held in law as a trustee, for the purposes of this case. The court denied this request, holding

that there was no question for the jury, and thereupon directed a verdict for the plaintiff.

*Francis Kernan* for the appellants. Plaintiff cannot recover a debt against the corporation from his co-trustees by virtue of section 12 of the general manufacturing act of 1848 (chap. 40; 2 R. S. [5th ed.], 661, § 12; *Andrews* v. *Murray*, 33 Barb., 354; *Bailey* v. *Banker*, 3 Hill, 188.) Plaintiff was a trustee of the corporation during the time in question. (2 R. S. [5th ed.], 659, § 3; id., 658, §§ 1, 2; *Bk. of Utica* v. *Smally*, 2 Cow., 270; *Gilbert* v. *Man. Iron Co.*, 11 Wend., 627; 2 R. S. [5th ed.], 660, 661, §§ 32–38.) Plaintiff was estopped, as against defendants, from denying that he was their co-trustee. (*Dezell* v. *Odell*, 3 Hill, 216, 221; *Fulton Bk.* v. *N. Y. Canal Co.*, 4 Paige, 133, 134.) Plaintiff was a trustee *de facto* and responsible, the same as though he had been appointed strictly in accordance with the statute. (*Deming* v. *Puleston*, 55 N. Y., 655; *People* v. *Runkle*, 9 J. R., 147, 149, 159; *People* v. *Collins*, 7 id., 549; *Trustees Vernon Soc.* v. *Hill*, 6 Cow., 23, 27; 2 R. S. [5th ed.], 599, § 3; id., 519, § 10; id., 663, § 46.)

*Mr. Avery* for the respondent. The action of the stockholders at their meeting of May 5, 1868, was wholly void and a nullity. (*Conro* v. *Pt. Henry Co.*, 12 Barb., 62; *McCollough* v. *Moss*, 5 Den., 575.) The court properly declined to hold, as matter of law, that plaintiff was estopped, as against defendants, from denying that he was a co-trustee with them, or that he was a co-trustee. (*O'Neill* v. *James*, 43 N. Y., 93; Herman's Law of Estoppel, 339, 345; *Halcroft* v *Hogins*, 52 Eng. C. L., 488; *Pott* v. *Eyton*, 54 id., 31; *Irvin* v. *Conklin*, 36 Barb., 64; *Chaut. Bk.* v. *White*, 6 N. Y., 236; *Carpenter* v. *Stillwell*, 11 id., 73; *Brown* v. *Bowen*, 30 id., 519; *Shapley* v. *Abbott*, 42 id., 443; *Welland Canal* v. *Hathaway*, 8 Wend., 480; *Wright* v. *Douglass*, 10 Barb., 108; *Ackley* v. *Dydert*, 33 id., 176; 1 Chitty on Pldgs., 509, 603; *Howard* v. *Mitchell*, 14 Mass., 242; 1 Saund., 325 *a*, note 4; Herman

on Estoppel, § 611; Code, § 149; *Winchell* v. *Hicks*, 18 N. Y., 558; *Craw* v. *Easterly*, 4 Lans., 513.)

DWIGHT, C. This is an action brought under the twelfth section of the general manufacturing act of 1848 (chapter 40). This provides that every company formed under the act shall, annually, within twenty days from the first of January, make a report which shall be published in a designated newspaper, and shall state the amount of capital, and the portion of it actually paid in, and the amount of its existing debts. The report is to be signed and verified and filed in the office of the county clerk of the county where the business is transacted. If the company fails to comply with this requirement all the trustees are made jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report is made.

It was proved in the case at bar that no report was made in compliance with the statute, and that the company was indebted to the plaintiff. The only defences open to the defendants are that by reason of the acts of the plaintiff he became a co-trustee with them, either actually or *de facto*, in such a sense that, though a creditor, he cannot avail himself of the provisions of the statute, or else that the plaintiff has not made all the trustees parties to the action.

I think it plain that if Easterly can be regarded as a co-trustee he would have no action against his associates. The object of the statute was considered in *Merchants' Bank* v. *Bliss* (35 N. Y., 412, 416). It was held to be punitive in its nature, and that its severe penalties were inflicted on grounds of public policy for the protection of creditors and the prevention of frauds upon the public in respect to the financial condition of the corporation. The liability of the trustees has no relation to the actual loss or injury sustained by the party in whose favor the action is given. It was accordingly held that the action fell within that section of the Code (§ 92) which provides a limitation as to the time of bringing an action where a " penalty is given to the party aggrieved." These reasons

cannot apply in favor of a trustee who is at the same time a creditor. If the report is not filed he must be deemed to participate in the default. He cannot have a cause of action against his associates based on his own wrong or default, nor is there any rule of public policy to be invoked in his favor. He cannot, at the same moment, subject himself to a penalty for delinquency in his character of trustee and invoke the policy of the law in his favor as a creditor to cast the burden of the penalty upon his associates. (*Briggs* v. *Easterly*, 62 Barb., 51.)

The controversy between the parties is thus narrowed down to the inquiry whether, for the purposes of this action, the plaintiff should, as between himself and the defendants, be regarded as a trustee? The question can be regarded from two points of view: Either Easterly was or was not properly elected a trustee in Wackman's place. If he was properly chosen, there is an end of the whole matter. Wackman being out of office and the plaintiff occupying his place, the latter is subject to all the duties, liabilities and responsibilities of the original trustees, and cannot maintain the present action against his associates. On the other hand, if Wackman, notwithstanding the sale of his stock, still remained in office and the act of the stockholders in professing to put the plaintiff in his place was nugatory and void, it becomes necessary to inquire whether the plaintiff is not to be regarded as *de facto* an officer or trustee in such a sense that he is precluded in this action from denying his trusteeship and from recovering from the defendants. The residue of the discussion will be confined to the consideration of this point.

The question was not adjudicated in the case of *Craw* v. *Easterly* (54 N. Y., 679) as it was not involved in its facts. That action was brought against the present plaintiff to make him liable to creditors for the same default in filing the report which is the subject of the present action. It appeared, however, in that case that he had withdrawn from the board before the default took place. The court held that under the circumstances he was not bound to continue to act as trustee,

Easterly *v.* Barber et al. 257

and having ceased to act in December, before the omission to file the report and the incurring of the debt to the plaintiff, Easterly was not liable. The difference in the facts disclosed in the present case make that decision inapplicable. The court there expressly refrained from deciding how far his acts might bind him and the company while he continued to act as trustee.

The general tendency of the authorities is, that the plaintiff became, for some purposes, an officer *de facto*, and his acts, to a certain extent, in that character would be binding on himself. (Angell & Ames on Corporations, §§ 286, 287, and cases cited.) It is there stated that a person, by color of election, may be an officer *de facto*, though the office was not vacant, but there was an existing officer *de jure* at the time. (*O'Brien* v. *Knivan,* Cro. James, 552; *Harris* v. *Jays,* Cro. Eliz., 699.) In *O'Brien* v. *Knivan* it appeared that John Bale was bishop of Ossory, in Ireland. Queen Mary, while Bale was living and in office, appointed one Toucey to the place, who did various acts in connection with the exercise of the duties of the bishopric. It was held by the court that all judicial acts performed by him, as admissions, institutions, certificates, etc., were good. Bale had abandoned the duties of his office, as Wackman did in the case at bar.

It is sometimes suggested that this result can only happen when there is color of an election. It is believed, however, that this is not necessary. In some of the cases the appointment has been made by persons having no authority whatever, and yet it has been held sufficient. Thus, in *Harris* v. *Jays (supra),* a steward of a manor, who could only be rightfully appointed by the lord, had the semblance of an appointment from the auditor and surveyor of a county. It was considered that he was a good officer *de facto* for most purposes. The approved definition of Lord Ellenborough plainly covers such a case. "An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." (*King* v. *Corporation of Bedford Level,* 6 East, 368, 369.) It is properly said by the authors of the treatise on

corporation law already referred to, that a person in office without even the form of an election might, within the terms of Lord ELLENBOROUGH's definition, have the reputation of being the officer he assumes to be. (§ 287.)   This subject has been recently discussed at great length and with much learning by the Supreme Court of Connecticut. (*State* v. *Carroll*, 12 Am. Law Reg. [N. S.], 165; S. C., 38 Conn., 449.)   It is there held, after a very extensive review of the authorities, that it is not absolutely necessary that an officer *de facto* should even have an appointment or election.   So, if there be color of appointment, etc., and it be void because there was want of power in the electing or appointing body, yet under all the circumstances the party may be still *de facto* an officer.   The true criterion is, did the person act under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be?   Under these rules it seems plain that Easterly might for some purpose be regarded as a *de facto* officer.   Though Wackman was still rightfully in office, and though the vote of the stockholders electing the plaintiff was a nullity, still he participated in the meetings, and in the business transactions of the company. Suppose that a contract had been entered into by means of his vote, could the company have avoided liability by pleading that Wackman was, after all, its trustee; Wackman, who had long since abandoned a post which Easterly was occupying with the apparently full consent of his associates, and that the acts of Easterly were without force?   I think not.   Such a view would be subversive of public justice.   It would cast upon persons dealing with these corporations a burden more heavy than they could bear.

It may be said that all this discussion has no bearing upon the position of Easterly and his associates.   If, however, it can be shown that for any purpose the plaintiff can be regarded as a trustee, it is a comparatively easy task to establish the proposition that he should be so considered in this case.   Though for some purposes these managers of corpora-

tions may be regarded, as they have been hitherto in this discussion, as officers, the more proper view to take of their functions is to consider them as trustees of the corporate funds and managers of the corporate business, the creditors and stockholders being the *cestui que trust.* Such is plainly the aspect in which the legislature of New York regards these trading and manufacturing corporations. In fact, the very section on which the plaintiff frames this action looks solely to proper management of the property. It requires the trustees to state in their report the amount of the capital actually paid in and the existing indebtedness. No other facts are required.

It would, therefore, seem that the real question is, can the plaintiff and the defendants in the application of the ordinary rules governing trusts be regarded as co-trustees?

It is a well-settled rule in the law of trusts that if a person not being in fact a trustee acts as such by mistake or intentionally, he thereby becomes a trustee *de son tort.* The rule is thus laid down by a recent writer: " A person may become a trustee by construction, by intermeddling with and assuming the management of property without authority. Such persons are trustees *de son tort* as persons who assume to deal with a deceased person's estate without authority are administrators *de son tort.* * * * During the possession and management by such constructive trustees they are subject to the same rules and remedies as other trustees." (Perry on Trusts, §§ 245, 265, 288 ; Lewin on Trusts, 244 ; Hill on Trustees, 173.) So if a person, without authority, enters upon an infant's land and takes the rents and profits he may be charged as a guardian or trustee, and so if he takes personal property. ( *Wyllie* v. *Ellice,* 6 Hare, 506 ; *Drury* v. *Conner,* 1 Harris & Gill, 220 ; *Blomfield* v. *Eyre,* 8 Beav., 250.)

It is plain that this branch of the law does not rest on the strict ground of estoppel as usually expounded in the law books. It rather depends upon a principle of public policy connected with the right administration of justice. (1 Greenl. on Ev., § 210.) The principle to be extracted from the cases is that the party acting as trustee shall not be allowed, in a

court of justice, to set up, as against parties interested in the administration of the trust, a state of things inconsistent with his assumed character. Such a rule is quite as applicable to the case at bar as to one where the assumed trustee is defendant. The plaintiff has acted with the defendants as their associate. He has voted with them in all the business affairs of the company. He, together with them, has been its mouthpiece and exponent. He has been, apparently, acting with them in the very omission which is the subject of this action. I do not think that he can now bring forward his character of creditor and entirely withdraw from view his conduct as acting trustee so as to allow him to recover penalties from those with whom he appeared to act, and who, perhaps, had their vigilance blunted by his neglect. The authorities are ample to sustain these views.

A leading case which elicited great discussion is *Rackham* v. *Siddall* (16 Simons, 297 ; S. C., on appeal, 1 M. & G., 607). The case of the *Life Association* v. *Siddall* (3 De G., F. & Jones, 58) is a branch of the same litigation. In *Rackham* v. *Siddall* a testator had devised all his real estates to one Grace Thompson and her heirs and assigns. It was held that certain estates, of which the testator was a trustee, did not pass by the devise. Grace Thompson, however, acted as though she had become a trustee, and in that character sold property and made over the avails to one Benjamin Norton, who was only a life tenant under the trust. He having become insolvent the entire trust fund was wasted. The bill was filed to make the estate of Grace Thompson responsible to the *cestui que trust* for the breach of duty.

The vice-chancellor expressed himself strongly to the effect that Grace Thompson's estate was liable. Though she was not in reality a trustee, yet as she assented to act she was bound to act properly and could not screen herself from the consequences of her acts merely by saying that she was not authorized to act. (16 Sim., 305, 306.) On appeal the Lord Chancellor (COTTENHAM) stated the rule in the following form : " I think that the decree is right in making Grace Thompson

liable. There is, indeed, no question about it. She took on herself, as the decree recites, to act as trustee; and if a party takes on himself to act as trustee and to sell a trust estate and receives the purchase-money, it will not do for that party, whether the purchase-money remains in his pocket or he hands it over to somebody else under circumstances that leave him liable, to say: 'I do not think that, under the circumstances, I was, strictly speaking, a trustee. Somebody else was, and therefore you, the party who is *cestui que trust*, cannot call on me for the payment of the purchase-money.' It is quite clear that that could not be listened to." (1 M. & G., 620, 621.) In *Life Association* v. *Siddall* the principle of the rule, in *Rackham* v. *Siddall*, was stated as follows: "The principle of Lord COTTENHAM's decision is, that Grace Thompson having assumed to be a trustee and acted as such, could not be heard to say, for her own benefit, that she had no right to act as trustee." (3 De G., F. & J., 69.)

The question in this last case was, whether she was not in the same position for all purposes as if she had been duly appointed. Among others, was she subject to the provisions of the statute of limitations applicable to trustees of an express trust? To solve this inquiry it became necessary to determine whether her wrongful assumption of the position of a trustee made her case that of an express trust. The court (consisting of the lords justices and the lord chancellor, held that it did. The court said: "The argument was that this was not the case of express trust, but on the hearing we stated our opinion that it was. * * * Grace Thompson, although not a trustee, or legally representing the trustee, assumed to act as a trustee under the will. If she had by writing declared herself to be a trustee, the trust in her could not have been otherwise than express, and her conduct is equivalent to her written declaration." (72, 77.) It was accordingly held, that as a trustee of an express trust she could not plead the statute of limitations (3 and 4 Will. IV., c. 27). So in *Hennessey* v. *Bray* (33 Beav., 96, 102), a defendant, Mr. Jennings, was not properly and regularly appointed a trustee, but it was said the court can-

not regard that, because he has accepted the property upon the trusts of the will, and therefore is, *de facto*, a trustee, and must be held answerable for all the rents and profits of the estate which he has received.

In *Pearce* v. *Pearce* (22 Beav., 248), A and B were trustees. A deed was prepared appointing C a new trustee, in the place of B. It was executed by C, but not by the other parties, so that the appointment was invalid. At the same time the trust fund was transferred by A and B to A and C. Afterward A and C authorized the husband of the tenant for life to receive the fund, and it was lost. It was held that both C (who had not been appointed a trustee, though she had acted as such) and B were liable for the loss.

In *People* v. *Houghtaling* (7 Cal., 348), a tax collector had died having funds in his hands belonging to the State. It was held that his administrator, having taken possession of the money, might be sued by the State, as a trustee *de son tort*. Having taken possession of the State funds, he held them under some form of trusteeship which he could not deny.

While none of these decisions closely apply to the case at bar they announce a rule which can be resorted to for the purpose of disposing of it. This is, that a person having voluntarily assumed the character of trustee, shall not be permitted to deny either as to his co-trustees or *the cestuis que trust* that he held that character, or to disavow his acts done in that capacity. Accordingly the failure to file the report in this case was the plaintiff's failure as well as that of his associates. They could only be held liable with him to a creditor who had been aggrieved by their conduct. The plaintiff has not been injured. The penalties of the statute were not given for his protection. Though the present case is not in a court of equity, as were those which have been cited, they supply analogies which will justify us in holding that the plaintiff cannot in his character of creditor sue his associates in the practical management of the affairs of the " Stevenson Company " for their default in filing the annual report. If he was a constructive trustee for one purpose he was for all matters

connected with the due and faithful administration of the trust.

The judgment of the court below should be reversed.

All concur.

Judgment reversed.