WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-GATE.—June, 1881.

## TOMPKINS *v.* MOSEMAN.

### *In the matter of the estate of* WRIGHT HORTON, *deceased.*

Although Code Civ. Pro., § 2818, makes no provision for the *mode* of appointing a successor to a *deceased* testamentary trustee, the proper course is indicated by section 2481, subd. 11; which is to follow the practice of the late court of chancery.

Accordingly, on an application for a citation to show cause why such an appointment should not be made, *Held*, that a bond should be required of the appointee, and, it being discretionary with the court to what persons notice should be given, that service of the citation should be made on all the next of kin of the testator, residing in the county.

PETITION for the appointment of a successor to a deceased testamentary trustee.

The will of Wright Horton was admitted to probate in Westchester county, in 1861. By its provisions, he bequeathed certain general legacies, after the payment of which, and of his debts, he gave the rest and residue of his estate to his children in certain shares. To his daughter, Martha Ann Tompkins, he gave, besides a legacy

of $50, one-half of one-eighth of said residue.   By a codicil, he revoked this provision and gave the same to his son, Frost Horton, in trust, to invest and pay the income to her for life, no disposition of the remainder being made.   The sum which came into the hands of the trustee was $690.   The trustee died in 1880, leaving a will, of which Stephen D. Horton was appointed executor. The estate of Wright Horton had long since been distributed and settled, the only surviving residuary and general legatees, other than Martha A. Tompkins, being Betsey A. Moseman, Peter Q. Horton, Elizabeth Williamson, Amy A. Irish and Harriet Irish.   Mrs. Tompkins presented a petition alleging the above facts, showing that there were no creditors of said Wright Horton, and praying for the issuing and service of a citation upon all persons interested in the estate of said Wright Horton, deceased, to show cause why one Elias Q. Horton should not be appointed trustee, in the place and stead of said Frost Horton, deceased.

D. W. TRAVIS. *for the petitioner.*

THE SURROGATE.—It is provided by section 2818 of the Code of Civil Procedure that "where a sole testamentary trustee dies, or becomes a lunatic, or is, by a decree of the Surrogate's court removed or allowed to resign, and the trust has not been fully executed, the same court may appoint his successor ; unless such an appointment would contravene the express terms of the will. Where a decree, *removing* the trustee, or discharging him upon his resignation, does not designate his successor ; or the person designated therein does not qualify ; the successor must be appointed and must qualify, as

prescribed by law for the appointment and qualification of an administrator with the will annexed." It will be seen that the mode of appointment of a successor, as provided by the latter clause of the section, applies only to the case of the *removal*, or *resignation* of a trustee, and not where the vacancy arises from death or lunacy. This omission would seem to have occurred in this wise. In the report of the commissioners, in 1875, to the legislature, provision was made for the appointment of a successor only where the trustee had been removed, or permitted to resign, the commissioners remarking in a note to section 2587, of the report, that they were "not disposed to recommend the extension of the power to vacancies created by death, insanity, etc." While, in a note to section 2818, now the law, they say of it: "It also confers power to fill vacancies created by death or insanity." Hence, the reported section was amended simply in those respects, leaving the latter clause untouched, and thus failing to point out the mode of procedure for the appointment of a successor where the vacancy was created by death or insanity. But the court is relieved from any embarrasment on the subject, by the provisions of subdivision 11 of section 2481, which declares the Surrogate to have power "with respect to any matter not expressly provided for in the foregoing subdivisions of this section, to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court having, by the common law, jurisdiction of such matters, except as otherwise prescribed by statute."

It appears that, by the codicil to the will of the testator, no disposition is made of the fund after the death of the *cestui qui trust* in any manner; and whether it will

pass to his next of kin, or to the residuary legatees named in the will, other than the *cestui qui trust*, it is unnecessary to inquire, as in either case the persons are the same. The names of these are not all stated in the petition in this matter, nor is it deemed important, although it might be proper, that they should be.

In looking into the course and practice of the late court of chancery, which had jurisdiction of all cases relating to trusts, it will be found that it was the practice to require a bond of a new trustee appointed in place of one who had died or been removed, and which practice is followed by the present supreme court in the exercise of equity powers (People *v.* Norton, 9 *N. Y.*, 176; Matter of Robinson, 37 *Id.*, 261). It is also held, in the case last cited, that, in a matter of this kind, where such bond is required, it is discretionary with the court, to whom notice shall be given.

Exercising such discretion in this case, I think it will suffice to direct the service of a citation upon all of the next of kin who are residents of this county. Among these are Betsey A. Moseman and Peter Q. Horton, the only surviving children of the testator.

Ordered accordingly.