[S. F. No. 10803. In Bank.—June 12, 1925.]

## MARY D. ENGLAND, as Executrix, etc., Appellant, v. G. B. WINSLOW, Respondent.

[1] ESTATES OF DECEASED PERSONS—COLLECTION OF RENTS BELONGING TO ESTATE—VALIDITY OF AGREEMENT MADE BEFORE PROBATE OF WILL.—A contract between the surviving husband and the person named as the executrix in the will of the deceased wife, entered into after the death of the testatrix but prior to the admission of the will to probate and the appointment and qualification of said executrix, wherein it is agreed that the husband will collect the rents from certain flats which were the separate property of the decedent, pay the expenses in connection with said property, and hold the net proceeds until the will of the decedent is admitted to probate and said executrix or some other person is appointed to execute said will, and thereafter in trust until the person so appointed shall demand such net proceeds, is such an agreement as the contracting parties, as individuals, are under no disqualification to make, and as between such individuals it meets every requirement to render it a lawful contract under the provisions of sections 1549 and 1550 of the Civil Code.

[2] ID.—VALIDITY OF AGREEMENT BETWEEN CONTRACTING PARTIES— TRUST FOR BENEFIT OF ESTATE.—Conceding that the estate of the deceased wife is not a party to such agreement between said person named in the will as executrix and the husband of the deceased, wherein the latter undertakes to collect the rents from certain properties of said estate and hold the net proceeds in trust, and that the said estate is not primarily bound thereby, that fact does not militate against the validity or binding effect of such agreement between the immediate parties thereto; and, under section 2219 of the Civil Code, any moneys collected by the husband pursuant to the terms of said agreement will be deemed to have been received by him in the capacity of trustee for the benefit of said estate.

[3] ID.—VOLUNTARY TRUST — DENIAL OF VALIDITY — ESTOPPEL.—One who has assumed the relation and undertaken to act in the capacity of trustee and who has thereby come into the possession and control of the money or property of another cannot be heard to deny the validity of the trust under which he has admittedly acted and the benefits of which he has received and holds.

[4] ID.—VOLUNTARY TRUSTEE—REMEDY OF BENEFICIARY—PLEADING.— The surviving husband, by virtue of said agreement entered into with the person named as executrix in the will of the deceased wife, whereby said husband voluntarily assumed the relation of trustee

with reference to the rent moneys of the estate coming into his hands, became the voluntary trustee of said estate with respect to such rent moneys, which were at all times the property of said estate; and the said estate, as the beneficiary of said trustee, had the right to establish and enforce the same in an action to establish such trust, for an accounting, and for the recovery of the moneys held under such trust.

[5] ID.—PROVISION FOR COMPENSATION—LIABILITY OF ESTATE—RIGHT TO ACCOUNTING.—Said surviving husband, having received the property of said estate as such trustee upon the presumed understanding that he would have no recourse against said estate but must look to the person with whom he contracted for compensation for his services cannot refuse to render an accounting for such property and pay the same over to its legal representative on demand on the ground that said estate is not bound by the portion of the agreement entered into between him and said person relating to his compensation.

[6] ID.—REPUDIATION OF TRUST—STATUTE OF LIMITATIONS—PLEADING. Said surviving husband being the trustee of a voluntary trust, and he having received and held the moneys of the estate of his deceased wife in that capacity and not otherwise, the statute of limitations did not begin to run in his favor until there was a repudiation by him of his trust, regardless of the form of action used to collect said moneys for the estate.

[7] ID.—DENIAL OF TRUST—FAILURE TO PERFORM DUTY—REPUDIATION—STATUTE OF LIMITATIONS.—The only way in which the trustee of an express or voluntary trust can set the statute of limitations in operation in his favor with respect to it or its properties in his hands is by a distinct act of repudiation amounting to a denial of its existence, and no mere tacit failure of the trustee to perform his duty in respect to such trust could or should be held to amount to a repudiation of it so as to set the statute of limitation in motion in his favor and as a result of his own neglect of duty.

[8] ID.—SEPARABLE INVALID PROVISIONS—VALID TRUST—DUTY TO ACCOUNT.—The fact that the agreement between the surviving husband and the person named as the executrix in the will of the deceased wife contains an invalid provision for the prolonged retention by the husband of the moneys of the estate of the deceased wife does not render the whole agreement void, where such invalid provision is easily separable from the other provisions of the agreement; and the invalidity of such clause will not affect the legal

7.  Application of statute of limitations as between trustee and beneficiary of express trust, notes, 3 Ann. Cas. 200; 13 Ann. Cas. 1165; Ann. Cas. 1917C, 1018. See, also, 17 R. C. L. 708; 16 Cal. Jur. 427.

duty of the husband to account for and deliver up the moneys of said estate and which are the subject of his voluntary trust.

[9] ID. — BREACH OF DUTY BY EXECUTRIX — REPUDIATION OF TRUST— STATUTE OF LIMITATIONS.—Conceding that it was the duty of the executrix, immediately upon her appointment and qualification, to have required said surviving husband to account for and pay over to her the moneys of the estate, the failure to perform such duty would not start the running of the statute of limitations in his favor, so long as there had been no repudiation by him of his trust.

[10] ID.—VOLUNTARY TRUSTS—STATUTE OF LIMITATIONS.—The doctrine that the plea of the statute of limitations is to be favored as a statute of repose is never given application to voluntary trusts, since to do so would be to render such statute not a beneficent statute of repose but a vile instrument of wrong in relation to those who are standing and continuing in voluntarily assumed confidential relations to each other.

---

(1) 23 C. J., p. 1180, n. 85 New.    (2) 39 Cyc., p. 62, n. 48, p. 71, n. 89.    (3) 39 Cyc., p. 91, n. 7.    (4) 39 Cyc., p. 71, n. 89, p. 522, n. 28.    (5) 22 C. J., p. 148, n. 67; 39 Cyc., p. 598, n. 2, p. 630, n. 9. (6) 37 C. J., p. 903, n. 22, p. 923, n. 34.    (7) 37 C. J., p. 926, n. 64, 66, p. 927, n. 76.    (8) 39 Cyc., p. 90, n. 97.    (9) 39 Cyc., p. 604, n. 46.    (10) 37 C. J., p. 684, n. 11, p. 903, n. 22.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge. Reversed.

The facts are stated in the opinion of the court.

Hoefler, Cook & Lingenfelter for Appellant.

Gerald C. Halsey and Frederick T. Leo for Respondent.

RICHARDS, J.—This appeal is prosecuted by the plaintiff from a judgment of the superior court in favor of the defendant after entry of an order sustaining the defendant's demurrer to the amended complaint. The facts upon which the plaintiff's alleged right of action is founded as set forth in said amended complaint are briefly these: Sophia R. Winslow died testate on May 1, 1919. In her last will and testament Harry D. Skellinger and Mary D. England

---

10. Limitation of actions as between trustor and trustee, note, 99 Am. Dec. 389.

were named as executor and executrix respectively thereof. Said Skellinger failed to apply for letters testamentary but Mary D. England did so apply, presenting said will and petitioning for its probate and the appointment of herself as executrix thereof. The court duly admitted said will to probate and appointed said Mary D. England the executrix thereof on June 17, 1919, and she thereafter duly qualified as such executrix and has since been acting as such. Belonging to said decedent at the time of her death was certain real estate in the city and county of San Francisco, occupied by six family apartments or flats, and which was the separate property of the decedent, in which the defendant herein, who was the husband and surviving spouse of the decedent, had no interest and was given no share by the terms of said will. The amended complaint proceeds to allege that the defendant, "during the month of May, 1919, and after the death of Sophia R. Winslow, knowing that plaintiff was one of the persons named in said will to execute the same agreed with plaintiff that he would collect the rents due from tenants occupying said premises during such time as plaintiff desired him to do so, pay the water rates and other expenses necessary to be paid on account of the use and occupancy of said premises, and to hold in trust the net proceeds of such collections until said will should be admitted to probate and plaintiff or some other person be appointed to execute said will, and thereafter in trust until such time as plaintiff or such other person so appointed, should demand of said defendant that he pay over to plaintiff or said other person, all of said net proceeds, less a compensation to be paid to defendant for his said services as such collector and trustee, amounting to the sum of (50) fifty cents for each monthly installment of rent collected by defendant from each of said tenants; that pursuant to said agreement defendant, after the death of said Sophia R. Winslow, collected from persons occupying said premises during the months of May, June, July, August and September of said year 1919, various sums of money which were paid to said defendant by said occupants as rent for the use and occupation of said premises during said months; that the exact amount of moneys so collected and held in trust by defendant is unknown to plaintiff, but plaintiff alleges that the aggregate amount thereof is

in excess of the sum of three hundred dollars ($300). That plaintiff made no demand upon defendant for said accounting and payment over by defendant until the year 1922, but during said year, and prior to the commencement of this action plaintiff demanded of the defendant that he account for, and pay over to plaintiff the moneys so collected by him as rents for the use and occupation of said premises, in accordance with said agreement, but said defendant has at all times refused and still refuses so to do; and has not done so. That the rents so collected by defendant are the rentals of said premises earned and accrued during said months and constitute the only rentals paid for the use and occupation of said premises during such period. Wherefore, plaintiff prays that defendant be required by the order of this honorable court to account for and pay over to plaintiff all moneys collected by him from tenants and persons having the use and occupation of the properties herein described since the death of said Sophia R. Winslow, in accordance with the terms of said agreement; that plaintiff have judgment against the defendant for the amount of said moneys so collected by him less said expenses and compensation, together with her costs and disbursements herein incurred, and that she have such other and further relief as to the court shall seem just and proper.''

To the plaintiff's said amended complaint the defendant interposed a demurrer upon several grounds, but the two grounds upon which the respondent's reliance is placed upon this appeal are that said complaint does not state facts sufficient to constitute a cause of action, and that said action is barred by several designated sections of the Code of Civil Procedure. The trial court sustained the defendant's demurrer and ordered judgment accordingly, and the correctness of its ruling in so doing is the sole issue presented upon this appeal.

The plaintiff's amended complaint is upon the face thereof one wherein the plaintiff as executrix of the estate of Sophia R. Winslow, deceased, seeks to have established a trust created for the benefit of said estate in certain money originally and at all times the property of said estate and of which the defendant became by virtue of the agreement above set forth the voluntary trustee; and to have an accounting as to the proceeds of such trust and general relief. It is the

estate of Winslow and not Mary D. England individually which is a party plaintiff in this action. (*Sterrett* v. *Barker*, 119 Cal. 492 [51 Pac. 695].) [1] The first question presented is as to the validity of the agreement between Mary D. England and the defendant out of which it is the plaintiff's claim that such trust relation arises. It is admittedly the fact that said agreement was entered into between said parties subsequent to the time when Mary D. England had been named in the decedent's will as an executrix thereof and also subsequent to the death of the deceased, but prior to the time when the said will of the decedent had been admitted to probate. It may be questioned therefore, whether said Mary D. England, in her capacity of prospective executrix of said estate had any authority to enter into such an agreement unless it could be held that she was entitled to do so under the provisions of section 1373 of the Code of Civil Procedure which empowers executors before their appointment and qualification to "pay funeral charges and take necessary measures for the preservation of the estate." With this phase of the question we do not deem it necessary to deal, since we are of the opinion that without respect to the ability of said prospective executrix as such to enter into it, or of its binding force upon the estate of Winslow, it was such an agreement as the parties thereto as individuals were under no disqualification to make, and that as between such individuals it meets every requirement to render it a lawful contract under the provisions of sections 1549 and 1550 of the Civil Code. The parties thereto as individuals were capable of contracting and consented so to do. There was a lawful object, viz., the conservation of the properties of an estate; there was sufficient consideration; and finally, there was an actual agreement by the terms of which the defendant was to proceed to collect certain moneys belonging to the estate of Sophia R. Winslow, deceased, and to hold the same for the use and benefit of and in trust for said estate; and to pay over the same to whoever was to become the legal representative of said estate upon demand. This is, we think, a fair interpretation of the agreement entered into as aforesaid between the defendant and Mary D. England under the terms of which the defendant herein acted in collecting and receiving and thereafter holding the moneys of said estate

for which an accounting and recovery is sought by said estate in the present action. It was a good and valid contract in so far as the individual parties to it were concerned. It was in fact such an agreement as the executors and administrators of estates are, as a matter of common knowledge, constantly and almost universally making with respect to the affairs and details of estates to which they cannot personally give their attention; as, for example, they employ lawyers to attend to the probate of estates, to bring suits for the recovery or preservation of the property of estates, to collect, hold and pay over the moneys due estates; they employ servants to perform the manual or clerical labor necessary for the benefit of estates; they contract with real estate and other agents to manage the properties of estates, to collect rents, make repairs, pay charges, and attend generally to those details of administration which are within the line of their special business adaptation, all of which are done and performed not for the individual benefit of the executor or administrator, but for the use and benefit of the estate. **[2]** It may be conceded that the estate is not a party to such agreements and is not primarily bound by them but that fact does not militate against the validity or binding effect of such agreements as between the immediate parties to them. It is not infrequent that by the terms or in the course of such agreements trust relations are created in the course of the execution of which the moneys or properties of the estate come into the possession and under the control of the party to the agreement who has engaged to act as such trustee. We are of the opinion that this is precisely such a case. The defendant herein by a perfectly valid agreement between himself and Mary D. England undertook to act in the capacity of a trustee in collecting, receiving and holding certain moneys at all times belonging to the estate of Winslow but due to it from other parties; and agreed to do so in such capacity for the benefit of said estate. As a result of such agreement and of his execution thereof there came into his possession and under his control certain money belonging to said estate. To such a situation it would seem that section 2219 of the Civil Code has direct application. Said section reads as follows: "Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee,

within the meaning of this chapter, not only as to the person who reposes such confidence, but also as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs, he, by such confidence, obtains any control.''

There is another reason why the defendant herein must respond to the estate of Winslow for this money which he has received and holds in the admitted relation of trustee. [3] One who has assumed the relation and undertaken to act in the capacity of a trustee and who has thereby come into the possession and control of the money or property of another cannot be heard to deny the validity of the trust under which he has admittedly acted and the benefits of which he has received and holds. (1 Perry on Trusts, sec. 433.) ''Under no circumstances,'' says this author, ''can a trustee claim or set up a claim to the trust property adverse to the *cestui que trust,* nor can he deny his title.'' This author further states (section 245) that a person may become a trustee by construction by intermeddling with and assuming the management of property without authority, and that during the possession and management thereof by such constructive trustees they are subject to the same rules and remedies as other trustees, and cannot avoid their liability as such by showing that they were not in fact trustees, nor can they set up the statute of limitations. The same learned author declares (section 265) that if a person by mistake or otherwise assumes the character of trustee and acts as such when the office does not belong to him, he thereby becomes a trustee *de son tort* and he may be called upon to account by the *cestui que trust* for the assets received under color of the trust. The cases cited in support of these doctrines under the various sections referred to fully sustain the text. In the case of *Easterly* v. *Barber et al.,* 65 N. Y. 252, 259, the doctrine is thus stated:

''It is a well settled rule in the law of trusts that if a person not being in fact a trustee acts as such by mistake or intentionally, he thereby becomes a trustee *de son tort.* The rule is thus laid down by a recent writer: 'A person may become a trustee by construction, by intermeddling with and assuming the management of property without authority. Such persons are trustees *de son tort* as persons who

assume to deal with a deceased person's estate without authority are administrators *de son tort,* . . . During the possession and management by such constructive trustees they are subject to the same rules and remedies as other trustees.'. (Perry on Trusts, secs. 245, 265, 288; Lewin on Trusts, 244; Hill on Trustees, 173.) So if a person without authority, enters upon an infant's land and takes the rents and profits he may be charged as a guardian or trustee, and so if he takes personal property. (*Wyllie* v. *Ellice,* 6 Hare (Eng.), 506; *Drury* v. *Conner,* 1 Har. & G. (Md.) 220; *Blomfield* v. *Eyre,* 8 Beav. 250.) It is plain that this branch of the law does not rest on the strict ground of estoppel as usually expounded in the law books. It rather depends upon a principle of public policy connected with the right administration of justice. (1 Greenl. on Ev., sec. 210.) The principle to be extracted from the cases is that the party acting as trustee shall not be allowed, in a court of justice, to set up, as against parties interested in the administration of the trust, a state of things inconsistent with his assumed character.''

In the case of *Damouth* v. *Klock,* 29 Mich. 289, it is held that defendants who have assumed without authority to administer an estate and have done so are estopped, when called upon either in a probate court or in a court of equity for an accounting, from denying their representative character or their liability to account accordingly. In the case of *Saunders* v. *Richard,* 35 Fla. 28, 43 [16 South. 679, 684], the court said: ''The principle has already been stated that a trustee who has accepted the trust and enters upon the discharge of his duties as such trustee and taken possession of the trust property, cannot in an action brought by his *cestui que trust* for an accounting for the trust property received by him allege the invalidity of his appointment as trustee.''

In the case of *People* v. *Norton,* 9 N. Y. 176, 178, it appears that one of the defendants had been acting as trustee under an appointment by a court and that the other defendant was the surety on his bond. In an action by the *cestui que trust* for an accounting the defendant undertook to allege the invalidity of the order of appointment on the ground that the *cestui que trust* had not been parties to or had notice of the proceedings. The court said: ''The true point of the objection to the validity of the

change of the trustee seems to be this: that it does not appear by the recital in the bond, that the *cestui que trust* were parties to or had notice of the proceeding. But this is an objection which neither the trustee nor his surety can be allowed to make. Lynch got possession of the trust estate, under the proceedings by color of which he claimed to be trustee, and Norton voluntarily undertook, as his surety, that he should faithfully administer the trust. If the proceeding was irregular, for want of notice to the children of Mrs. Lynch, they might object to it, in a proper manner, for that cause; but Lynch, after having obtained the property, upon the pretense of being a trustee, cannot be permitted to deny his liability to account as such. The defendant, who voluntarily became his surety, in order that he might take the trust property, is, for a like reason, precluded from denying his liability as surety.'' In the case of *Lehmann* v. *Rothbarth*, 111 Ill. 185, the husband of an administratrix of an estate and guardian of minor heirs assumed to act without authority for his wife in collecting and handling the funds of the estate. In an action brought against him by the heirs of the estate for an accounting it was held that the defendant, having assumed to act as the agent of the administratrix and guardian and having thereby come into possession of the property of the estate and of the heirs thereof, was liable to an accounting thereof as a trustee and could not be heard to allege his want of authority to act in his assumed capacity. In the case of *Shearman* v. *Morrison*, 149 Pa. 386 [24 Atl. 313], it was held that money received by an attorney-in-fact and trustee for others which was not within the letter of his appointment but which was received by virtue thereof, must be accounted for by him to his *cestui que trust* as a trustee, notwithstanding the irregularity of his appointment as such trustee. The cases might be multiplied indefinitely to the same effect and it must be regarded as settled law that one who assumes voluntarily to act in the capacity of a trustee and receives and holds the funds of another by virtue of such assumed relation, cannot be heard to allege the irregularity or invalidity of his appointment as such trustee in an action brought by the *cestui que trust* for an accounting for the proceeds of his trust. In Chaplin on Trusts, 78–192, the same doctrine is laid down, the author declaring

that trustees are estopped to deny the regularity of proceedings under which they secured possession of the trust property, citing in support thereof *People* v. *Norton, supra; Johnston* v. *Smith,* 25 Hun (N. Y.), 175–177; *Dodge* v. *St. John,* 96 N. Y. 260; *People* v. *Chalmers,* 60 N. Y. 154.

[4] It follows irresistibly that the defendant, by virtue of his said agreement whereby he voluntarily assumed the relation of trustee with relation to the moneys to presently come into his hands in the course of its execution, became as to such moneys the voluntary trustee of the estate of Winslow with respect to such moneys which were at all times the property of the estate; and hence that the said estate as the beneficiary of said trustee had a right to establish and enforce the same in this form of action.

[5] It is, however, the contention of the defendant that the trust which the estate is by this action seeking to enforce as a result of said agreement between himself and Mary D. England is unenforceable against him at the suit of the estate, for the reason that the estate is not bound by the portion of said agreement relating to his compensation and hence he cannot be bound to respond to the estate for the moneys belonging to it which he has collected and received by virtue of the other terms of said agreement. There are two answers to this contention. The first is that as between the defendant and Mary D. England the agreement is good and is enforceable as to all its parts, and if the defendant has performed any services thereunder he has his remedy against the latter for the value of such services according to the terms of said agreement; and the other answer is that parties entering into contracts of this character do so with knowledge of the law, and that the parties to this agreement therefore knew that the defendant could have primarily no recourse thereunder to the estate of Winslow for his compensation for services performed for the use and benefit of the estate, but must look to the prospective or actual executrix of said estate in her individual capacity for his reward; and hence that he agreed and undertook to act as a trustee for the benefit of said estate without the right or expectation of compensation directly from it. Having received its property as such trustee and under such understanding he cannot refuse to render an accounting for such property and to pay the

same over to its legal representative on demand and upon the ground stated. In this respect he is in no better or worse position than an attorney for the estate would be who had collected some of its money or property upon an agreement with a prospective or appointive executrix as to the amount of his attorney's fees. In either case the agent or attorney is acting as a trustee of the estate with relation to any of its moneys which may come into his hands as such and must pay the same over to it, looking for his compensation to the executrix individually with whom the agreement was made.

[6] The next question presented for consideration is that of the defendant's plea of the statute of limitations. But if our foregoing conclusions are correct to the extent of holding that the defendant is the trustee of a voluntary trust and that he received and held the moneys of the said estate in that capacity and not otherwise, the authorities are uniform in holding that the statute of limitations does not begin to run in favor of such a trustee until there has been a repudiation of his trust. (*Schroeder v. Jahns,* 27 Cal. 274; *McMullan v. Kelly,* 19 Cal. App. 700 [127 Pac. 819]; *Cohn v. Goodday,* 191 Cal. 615 [217 Pac. 756], and cases cited.) No repudiation of said trust appears upon the face of the amended complaint herein, at least prior to the alleged demand and refusal of the defendant thereupon to turn over said moneys to said estate or to render an accounting therefor. The present action was commenced shortly after the date of such demand and refusal. The respondent herein, however, insists that this action is not an action for the enforcement of a trust but is to be deemed an action by said estate for moneys had and received by the defendant for its use and benefit; and that in such form of action his plea of the statute of limitations is available. The amended complaint herein is not, as we have seen, in form an action for moneys had and received, but even if it could be construed to be such it affirmatively appears that the defendant received such moneys in the capacity of a voluntary trustee for the benefit of said estate, and this being so, the uniform current of authority is that, regardless of the form of action, the defense of the statute of limitations cannot be availed of until there has been a repudiation of the trust, and until the statutory

period thereafter has expired. (1 Perry on Trusts, sec. 246; *Putnam* v. *Lincoln Safe Deposit Co.*, 191 N. Y. 166–183 [83 N. E. 789]; *Soar* v. *Ashwell*, 2 Q. B. 390; *Goodhue* v. *Barnwell*, Rice Eq. R. (S. C.) 198.)

[7] The defendant, however, makes the further contention that conceding that he came lawfully into the possession of the said moneys of the estate it was his duty to turn the same over to the estate or to the legal representative thereof as soon as the latter was appointed and qualified and that his possession of such moneys became wrongful immediately upon his violation of his duty and trust in that regard; and hence that the statute of limitations immediately commenced to run. To admit the soundness of this contention would be not only to violate a cardinal maxim of jurisprudence which forbids any person from taking advantage of his own wrong (Civ. Code, sec. 3517), but would also be to violate that equally essential rule of equity embodied in section 2228 et seq. of the Civil Code, which requires trustees to exercise the highest good faith with respect to the properties and beneficiaries of the trust, and which forbid trustees to obtain any personal advantage whatever in the course of its administration. To permit this trustee of a voluntarily assumed trust to assert successfully that his mere failure or neglect to perform his duty to account for and turn over the moneys of the estate in his possession as such trustee rendered his trust wrongful so as to set in motion the statute of limitations in his favor would not only serve to defeat these statutory provisions of the code, but would have the effect of imperiling every other express or voluntarily assumed trust, no matter how extensive or how sacred, by the mere failure of an erring or neglectful trustee to perform his duty in promptly accounting for or paying over the proceeds of his trust. The only way in which the trustee of an express or voluntary trust can set the statute of limitations in operation in his favor with respect to it or its properties in his hands is by a distinct act of repudiation amounting to a denial of its existence, and no mere tacit failure of the trustee to perform his duty in respect to such trust could or should be held to amount to a repudiation of it so as to set the statute of limitations in motion in his favor and as a result of his own neglect of duty. (*Janes* v. *Throckmorton*, 57 Cal.

368; *Zuck* v. *Culp,* 59 Cal. 142; *McClure* v. *Colyear,* 80 Cal.
378 [29 Pac. 175]; *Roach* v. *Caraffa,* 85 Cal. 436 [25 Pac.
22]; *Butler* v. *Hyland,* 89 Cal. 575 [26 Pac. 1108]; *Luco*
v. *DeToro,* 91 Cal. 405 [18 Pac. 866, 27 Pac. 1082]. See
*Odell* v. *Moss,* 130 Cal. 352 [62 Pac. 555].) [8] Again, it is
urged by the respondent herein that under the terms of
the agreement out of which or of the execution of which this
trust arose, the trustee was entitled to hold the moneys in
question until such time as they should be demanded by the
legal representative of the estate and that such an agree-
ment would be void as beyond the power of either the pros-
pective or appointive executrix to make it, and hence that
the entire agreement is void. We do not concede that the
terms of the agreement contemplated any such prolonged
retention of these moneys by the trustee after the appoint-
ment and qualification of a legal representative of the estate
as would subject the agreement to this criticism, but even
if it were to be so construed and, if so interpreted, this por-
tion of said agreement could be held void, it would not
follow that the entire agreement would thereby be violated
and the trustee be relieved of all duty to pay over to the
estate the moneys belonging to it and which he has come
into the possession of under the other portions of said agree-
ment. The clause in said agreement relating to the duty of
the trustee to account and pay over to said estate the moneys
which he has collected and holds as such trustee upon de-
mand is easily separable from the provisions of said agree-
ment which empowered and have enabled him to collect such
money, and even if the said clause in said agreement should
be held void it would not affect the legal duty of the trustee
to account for and deliver up the money which is the subject
of his voluntary trust. [9] It is, however, urged that it
was the duty of the executrix to have immediately upon her
appointment and qualification required of said trustee that
he account for and pay over said moneys, and that the fail-
ure to perform such duty would render the further holding
of such moneys wrongful on the part of the trustee and thus
start the running of the statute of limitations. There is no
merit in this contention, for even if it were conceded that
the delay of the executrix would be a breach of her duty to
the estate it would not render the trust wrongful as to the
voluntary holding of its funds in that capacity by the
196 Cal.—18

trustee, nor could the trustee who was thus holding such funds and benefiting by the delay be heard to urge such contention so long as there had been on his part no repudiation of his trust.

[10] Finally, it is urged that the plea of the statute of limitations is to be favored as a statute of repose. While this is a true doctrine as to those persons who are standing at arm's-length in their dealings with each other, it has never been given application to voluntary trusts, since to do so would be to render such statute not a beneficent statute of repose but a vile instrument of wrong in relation to those who are standing and continuing in voluntarily assumed confidential relations to each other. It has therefore no application to the facts of the instant case.

The judgment is reversed.

Seawell, J., Shenk, J., and Waste, J., concurred.