ANDREW B. RUSSELL, Appellant, *v.* JAMES C. HARTT et al., Respondents.

Where a legatee and executrix named in a will, by a power of attorney duly executed, appointed another her agent and attorney, in her name and place to present the will for probate, to have the same duly proved, and to ask for and receive letters of administration, *held*, that the attorney so appointed was "a person interested in the estate" within the meaning of the provision of the act of 1837, "concerning the proof of wills," which prescribes who may have a will proved (§ 4, chapter 460, Laws of 1837); and so, that he had a right to ask by petition for the issue of the letters of administration to which he was entitled; and that the surrogate had jurisdiction to act upon such petition.

Where, after proceedings for the probate of a will, a minor becomes interested by reason of the death of one of the parties, and the surrogate "ascertains" that fact (§ 6), it is his right and duty to bring in such minor, and to appoint for him a special guardian in case he has no general guardian.

The affidavit of an attorney or counsel in the case is quite sufficient to give the information and authorize the surrogate to act.

Where a testator, not an inhabitant of this State, dies out of it leaving assets, the surrogate of the county where the assets are has jurisdiction to take proof of the will, and may act although the original will is in the possession of a court or tribunal of another country, and cannot be produced before him.

Where, in proceedings for the probate of such a will, a commission was issued by a surrogate to take the testimony of witnesses in another country, and the original will was produced before said commissioners, *held*, that the commission made the commissioners officers of the court, for the purposes for which it was issued; that in the execution of the authority conferred, they stood in the place of and represented the court, and the exhibition of the will before them was substantially a production thereof before the court.

*It seems* that the surrogate had the right to admit the will to probate upon production of the exemplification of the foreign record.

(Submitted October 19, 1881; decided November 22, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made September 19, 1879, which affirmed a decree of the surrogate of the county of Ulster, admitting to probate the will of John Russell, "late of Broompark, Denny Sterlingshire, Scotland, deceased," as a will of real and personal estate.

The will had been previously admitted to probate in Scotland, and was in the custody of the court there. It disposed of real estate situate in Ulster county, and of personal property in this State as well as of real and personal property in Scotland. It was executed according to the laws of Scotland, and also according to the laws of this State. The evidence of the subscribing witnesses to the will was taken by commission issued by said surrogate to commissioners residing in Scotland, a copy of the will was annexed to the commission, and certified by the commissioners as a correct copy.

The further material facts pertinent to the questions discussed are stated in the opinion.

*Chas. A. Fowler* for appellant. There was no petition before the surrogate on which he was authorized to act. (Laws of 1837, chap. 460, § 4; 3 R. S. [6th ed.] 65, § 52; *Havens* v. *Sherman,* 42 Barb. 636.) This will, "being in the possession of a court or tribunal of justice in another country, whence it could not be obtained," the surrogate had no jurisdiction to take proof of it as a will of real estate. (3 R. S. [6th ed.] 70, § 88; Laws of 1829, chap. 300, § 16; Laws of 1837, chap. 460, § 77; 5 Edm. Stat., 631, § 5; Laws of 1840, chap. 384.) A surrogate has only such powers as are conferred by statute. (*McNulty* v. *Hurd,* 72 N. Y. 520; *Du Bois* v. *Sands,* 43 Barb. 412; *Wells* v. *Newkirk,* 1 Johns. Ch. 228; *Isham* v. *Gibbons,* 1 Brad. 78.) The will was not sufficiently proved as a will of personal estate. (*In re Easton's Will,* 6 Paige, 183; *Will of John Alexander,* 1 Tucker, 114.)

*S. L. Stebbins* for respondents. James C. Hartt as attorney in fact of the sole executrix was competent to make the ap-

plication for probate. (Redfield's Law and Practice of Surrogates' Courts, 65 ; 4 Edmonds' Statutes at Large, 487, § 4.) The surrogate had jurisdiction to admit the will to probate. (*Brick's Estate*, 15 Abb. 31, 32; Redfield's Surrogate, 23, note; *Isham* v. *Gibbons*, 1 Bradf. 75, 76, 79; *Van Rensselaer* v. *Morris*, 1 Paige, 13; 2 R. S. [1st ed.] 60, § 23; id. 57, § 7; Redfield, 10; chap. 403 of 1863 (6 Edmonds, 144.) The consular certificates completed the authentication of the exemplification of the foreign record, and it should have been admitted in evidence when first offered. (*Packard* v. *Hill*, 7 Cow. [3d ed.] 434, 436 [437], 442 [443], 443 [444]; *S. C.*, 2 Wend. 412; 5 id. 376, 391; *Gardere* v. *Col. Ins. Co.*, 7 Johns. 514, 515, 516, 518, 519.) The foreign probate is conclusive. ; (Bigelow on Estoppel [1st ed.], 175.)

FINCH, J. The jurisdiction of the surrogate of Ulster county to take the proof of a will of real and personal estate, executed in Scotland by a citizen of this State temporarily resident in that country, in accordance both with the foreign law and with our own, upon the production of an exemplified copy of the will, the original remaining in the custody of the foreign tribunal, is questioned upon this appeal.

That jurisdiction is first assailed upon the ground of the insufficiency of the petition with which the proceedings for probate began. Janet Russell was a legatee and devisee, and named as executrix in the will of the testator. Her right to ask for its probate is not at all questioned, but that is claimed to be a personal right which could not be devolved upon a stranger to the estate, or, if so, was not in the present case formally and sufficiently acted upon. The legatee and executrix, by a power of attorney duly and properly executed, and which recited at large the circumstances rendering it necessary, appointed the respondent Hartt her agent and attorney, in her name, place and stead, to present the will or duly authenticated copies thereof to the proper surrogate for probate, and to have the same duly proven as a will of real and personal estate, and to ask for and receive letters of ad-

ministration, and take possession of and administer upon the estate of the deceased. Hartt thereafter presented to the surrogate of Ulster county a petition setting forth the usual and necessary facts and, in addition, detailing the peculiar circumstances of the case, and asking for the probate of the will and the issue to himself of letters of administration with the will annexed. This petition was accompanied on its production to the surrogate by the original letter of attorney. Upon these papers the surrogate acted, and issued the usual citations. It is now objected that under the power of attorney the respondent was only authorized to petition for probate "in the name" of the executrix, and that the petition actually presented was in his own name and not in that of his principal. The criticism has very little just force beyond its purely technical character, and touches rather the form than the substance of the proceeding. The petition and letter of attorney taken together substantially make Janet Russell the real petitioner; but if, by reason of the form adopted, some doubt should remain, it is sufficient to say further that the letter of attorney transferred to Hartt the right of the executrix to letters of administration, and that a person having such right is, in our opinion, a person "interested in the estate" (3 R. S. [6th ed.].65, § 52), and so has a right to ask by petition for the issue of the letters of administration to which he is entitled. The surrogate, therefore, properly acted upon the petition and had jurisdiction to entertain the proceeding.

During its progress, and while it was pending, Janette Ostrander, one of the contestants, died, leaving infant heirs. A supplementary petition, signed "James C. Hartt by S. L. Stebbins," was thereupon presented to the surrogate, setting forth such death of one of the parties and the names of the infant heirs. Citations were issued to such infants, and on their return a special guardian was appointed. It is now objected that Stebbins, who was merely counsel for Hartt, had no right to make the petition and the surrogate gained no jurisdiction over the infants. We are not able to see the necessity of a petition by Hartt or, indeed, of any petition to justify the surrogate in

bringing in the infants. The officer had already acquired juris-
diction of the proceeding and of the parties who were entitled
to be heard at its commencement. The statute provides that
upon an application for the probate of a will, the surrogate shall
" ascertain " whether any of the persons interested are minors,
and if so, their names and places of residence, and if there be
such, appoint a special guardian to take care of their interests.
(Laws of 1837, chap. 460, § 6 ; 3 R. S. [5th ed.] 147, § 51.)
While it is common to furnish the requisite information in the
original petition, we know of no rule which compels the surro-
gate to "ascertain" it in that way alone. And when, after pro-
ceedings for probate actually begun, a minor becomes interested
by reason of the death of one of the parties, and the surrogate
"ascertains" that fact, his duty and right to bring in such
minor and appoint for him a special guardian is equally plain.
How the officer ascertains the fact and the necessity is not made
material. The affidavit of an attorney or counsel in the case is
quite sufficient to give the information and authorize the sur-
rogate to act. In a case before the surrogate of New York,
the omission of a minor as a party to the proceeding was dis-
covered by the surrogate himself, after twelve years of litiga-
tion, and a special guardian appointed. (*Saltus' Estate*, 1
Tucker, 230.)

Passing these preliminary objections we reach the graver and
more important claim that the surrogate had no jurisdiction to
take proof of the will as a will of real estate because it was in
the possession of a court or tribunal of justice in another country,
whence it could not be obtained. The dispute comes down
to a single point. The appellant insists that prior to the act of
1830 (Chap. 320) there was no jurisdiction or authority lodged
anywhere to take the proof of foreign wills, and for that reason,
expressly so stated by the revisers, seven new sections were
added conferring such power upon the chancellor. On behalf
of the respondent it is said that jurisdiction to take the proof
of foreign wills was vested in the Surrogate's Court, but was so
hampered and rendered ineffectual in cases where the witnesses
could not be produced by the inability of that court to issue a
commission as to make necessary and occasion the authority

conferred upon the chancellor; that such jurisdiction in equity was concurrent with that of the Surrogate's Court and did not exclude it; and that the difficulty in the way of the latter court of its want of power to issue a commission was removed in 1837 (Chap. 460, § 77). In *Isham* v. *Gibbons* (1 Bradf. 69) the learned surrogate very satisfactorily demonstrates that jurisdiction has always been with the surrogate to take the proof of foreign wills, having been conferred by the general authority to take the proof of wills of non-inhabitants where assets have been left in or have come into his county (Act of 1787, 1 Greenl. 366; act of 1801, 1 R. L. 449), and that the practice has been uniform to issue letters testamentary or of administration on the production of an exemplification of the foreign decree of probate. The very learned opinion of Judge Daly in the case of *Brick's Estate* (15 Abb. Pr. 31) traces out and explains the early authority and jurisdiction of the Surrogates' Courts with a patience and accuracy of research which leaves nothing to be added. It seems to us most probable that by the phrase " foreign wills " the revisers meant such wills as could only be proved abroad because the witnesses resided abroad. (*Isham* v. *Gibbons, supra.*) In that sense the defect they pointed out existed. It could be remedied in two ways. One was to give the necessary probate jurisdiction to the Courts of Chancery, which could issue a commission to examine the foreign witnesses; and the other was to arm the Surrogate's Court with authority to issue a commission. The revisers adopted the first method, but the legislature in 1837 added the second. It is said, however, and that appears to be the precise and ultimate point of the argument made by the learned counsel for the appellant, that except in the case provided for by chapter 384 of the Laws of 1840, no authority has ever been given to a surrogate to act on a will the original of which cannot be produced before him. We think the act of 1837 is broad enough to cover the case. It expressly authorizes the surrogate of each county to take proof of the last wills of *all* deceased persons where the testator, not being an inhabitant of this State, shall die out of the State leaving assets in the county of such surrogate (§ 1); and then restores the in-

cidental powers of surrogates, and authorizes them to issue commissions to take testimony in foreign countries. And the right of the surrogate to admit a will to probate within this State upon the production of an exemplification of the foreign record thereof, is distinctly recognized by chapter 403 of the act of 1863. But the point pressed upon us is also well answered by the suggestion of the learned surrogate who admitted the will to probate, that the commission issued by the surrogate made the commissioners officers of the court for the purposes for which it was issued; that in the execution of the authority conferred they stood in the place of and represented the court; and that the exhibition of the original will before them in Scotland was substantially a production of the will before the court. Certainly no really useful or beneficial purpose to be derived from such production was lost to the parties, when the commissioners appointed by the court were enabled to see and examine it, and certify personally to the correctness of the copy returned.

The final point taken by the appellant is founded upon an alleged fact which the surrogate has found against him, and we think correctly upon the evidence. The finding is expressly that the deceased was an inhabitant of Scotland at the time of his death, and not of this State.

The judgment of the General Term affirming the decree of the surrogate should be affirmed, with costs.

All concur.

Judgment affirmed.