In the Matter of the Application for Probate of a Codicil to the Will of JOHN F. DELAPLAINE, Deceased.

*Probate of will — jurisdiction of the surrogate to grant or refuse it — actual production of the paper is not essential — when the instrument need not be attested.*

A petition presented to the Surrogate's Court of the county of New York for the probate of an instrument purporting to be a second codicil to the will of one J. F. Delaplaine, alleged that he died in February, 1885, in the city of New York, leaving in the said city personal assets of great value; that the said codicil was entirely holographic and was executed in Vienna, Empire of Austria; that it did not purport to have been executed in the presence of any person as a subscribing witness, but was executed in accordance with the law of the said Empire of Austria, in which the decedent then had his residence and permanent domicile; that it was not produced before the surrogate for the reason that it was in the possession of a certain Austrian court therein specified, which court would not suffer it to be removed from its files.

*Held*, that an objection, that the actual production of the testamentary paper before the surogate was essential to the exercise of his jurisdiction to grant or refuse probate, was properly overruled.

*Russell* v. *Hartt* (87 N. Y., 19) followed.

That the fact that the instrument offered for probate was unattested did not require the surrogate to dismiss the petition for want of jurisdiction.

APPEAL from an order of the Surrogate's Court of the county of New York, made and entered on the 21st day of April, 1887, dismissing motions made by the appellants to dismiss the special proceeding on the ground of want of jurisdiction in the surrogate to take proof of a will under the circumstances appearing in this proceeding.

The will and first codicil of the late John F. Delaplaine were admitted to probate by the surrogate of New York county on the 21st day of May, 1885. In June, 1886, Amelia A. Stölzel and Arthur F. Stölzel, two legatees under a subsequent codicil dated July 17, 1883, commenced a proceeding in the Surrogate's Court for the proof thereof. They did not produce the original codicil to the surrogate, stating in their petition, that it was in the possession of an Austrian court in which it had been propounded for proof; that it had not yet been proved and the court refused to allow it to be taken out of its possession.

The codicil propounded is holographic, and it is alleged in the petition that it is executed in accordance with the laws of Austria, of which country the testator was a resident at the time of its execution.

Further facts appear in the surrogate's opinion. (See note.)

*Michael H. Cardozo*, for Cruikshank, executor, appellant.

*Lucien B. Chase*, for the appellant Chase.

*Joseph A. Welch*, for Chambers, executor, appellant.

*H. W. Taft* and *D. H. Chamberlain*, for the petitioners, respondents.

The following is a copy of the opinion delivered by the surrogate:

ROLLINS, S. Amelia A. Stölzel and Arthur F. Stölzel, as devisees and legatees under an instrument claimed to have been executed by this decedent on July 17, 1883, as a second codicil to a paper heretofore admitted to probate as his last will and testament, commenced in June last a proceeding in this court for the probate of such second codicil.

It is alleged in their petition that the decedent died in February, 1885, in the city of New York; that he left in the said city personal assets of great value; that the paper under which the petitioners claim came into being in the city of Vienna, in the Empire of Austria; that it is holographic and bears the signature of decedent as its maker; that though it does not purport to have been executed in the presence of any person as a subscribing witness, it is, nevertheless, valid and effectual because it was executed in accordance with the laws of the said Empire of Austria, in which decedent then had his residence and permanent domicile; that it is not produced before the surrogate for the reason that it is in the possession of a certain Austrian court in the petition specified, which court will not suffer it to be removed from its files. Answers have been interposed on behalf of certain persons interested under the will as proved.

It is insisted by the respondents that this court is without jurisdiction in the premises, first, because of the non-production of the instrument whose probate is sought; and, second, because of the conceded fact that such instrument is without subscribing witnesses.

*First.* Is the actual production of a testamentary paper before the surrogate essential to the exercise of his jurisdiction to grant or refuse probate? Certainly not in all cases. Section 2621 of the Code of Civil Procedure expressly declares that " a lost or destroyed will" can be proved in a Surrogate's Court. But the respondents claim that only such cases as are covered by section 2621 are excepted from what they insist is the general rule, that without the physical presence of the paper sought to be established as a will the surrogate is powerless to adjudicate upon its title to probate. If there had been no change in the statute touching the jurisdiction of this court since the arising of the situation, upon which the Court of Appeals comments in *Russell* v. *Hartt* (87 N. Y., 19), the question here presented would be susceptible of an easy solution. That situation was as follows: The surrogate of Ulster county had admitted to probate an instrument that had never been produced before him, and that could not be produced for the reason that it was in the custody of a court in Scotland, which refused to give it up. That instrument disposed of real and personal property

VAN BRUNT, P. J.:

It may not be at all necessary to add anything to the opinion which has been rendered by the surrogate upon the disposition of this motion. It may be proper however to consider, in view of the intimation of the Court of Appeals in the case of *Younger* v. *Duffy* (94 N. Y., 535), whether any change has been made by the Code of Civil Procedure in the practice and powers of the surrogate as

---

in Scotland, and of other real and personal property in the State of New York. It had been executed in accordance with the formalities both of the Scotch law and of the law of this State. The subscribing witnesses were examined in Scotland under a commission issued by the surrogate, and their depositions were admitted at the trial and constituted the evidence by which the decree appealed from was supported. In the course of an opinion, in which all his associate judges concurred, FINCH, J., pronounced chapter 460 of the act of May 16, 1837, broad enough in its terms to authorize the surrogate to take proofs of an existing will without requiring its production.

The provisions to which the learned judge referred were manifestly those contained in the first, seventy-first and seventy-seventh sections of the act.

Section 1 gave to the surrogate of each county authority "*to take the proof of last wills and testaments of all deceased persons* in the following cases" — (naming them). Section 71 expressly abrogated the limitation imposed upon the surrogate's authority by section 1, title 1, chapter 2, part 3 of the Revised Statutes, to the effect that "no surrogate shall, under pretext of incidental power or constructive authority exercise any jurisdiction whatever not expressly given by some statute of this State." Section 77 provided that "on any proceeding or matter in controversy before a surrogate, when the testimony of a witness in any other State or territory of the United States, or in any foreign place, is required by any party to such proceeding or controversy, the surrogate may issue a commission to take such testimony."

The act of 1837 was repealed in terms by the general repealing act of May 10, 1880 (Laws 1880, Chap. 245), but the provisions upon which rests the decision in *Russell* v. *Hartt* were substantially re-enacted in the Code of Civil Procedure: First. Section 1 of the old law reappears as section 2476 of the Code. To the surrogate's court of each county the latter statute gives "jurisdiction, exclusive of every other surrogate *to take the proof of a will* in either of the following cases" — (specifying them). A comparison of the language just quoted with the language of section 1 of the act of 1837 (*supra*), does not even faintly suggest the notion that by the latter statute the legislature intended to restrain the surrogate's probate jurisdiction within narrower limits than had been fixed by the earlier. *Unqualified* authority "to take the proof of a will" would surely be no less comprehensive than *unqualified* authority "to take the proof of last wills and testaments of all deceased persons;" and while the authority conferred by neither of the statutes under consideration is unqualified, but in both of them is limited to certain specified "following cases," it will appear, when

they existed at the time that the question in the case of *Russell* v. *Hartt* (87 N. Y. 19) arose.

It is admitted by the counsel for the appellants that if no change has been made in the jurisdiction of the Surrogate's Court by the present Code, that the decision in the case of *Russell* v. *Hartt* must be deemed conclusive as to the existence of jurisdiction in the Surrogate's Court to entertain the application in question.

It is to be observed that the decision in *Russell* v. *Hartt* seems

the two sets of "following cases" are juxtaposited, that while the field of the surrogate's jurisdiction has been in no respect narrowed, it has been in some respects enlarged by the latter enactment. Second. It cannot be claimed that any change has been wrought in the character and the extent of the authority of this court by the repeal of section 71 of the act of 1837, which itself repealed the inhibition of the Revised Statutes against the exercise by the surrogate of "incidental powers;" for, by subdivision 11 of section 2,481 of the Code, the surrogate is authorized "to proceed in all matters subject to the cognizance of his court, according to the course and practice of a court having, by the common law,' jurisdiction of such matters, except as otherwise prescribed by statute, and to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred." It is true that section 2472 of the Code, which is now the source of the surrogate's general jurisdiction, and which, in its first subdivision, empowers him "to take the proof of wills," and "to admit wills to probate," declares in its concluding sentence that the jurisdiction thus conferred "must be exercised in the cases and in the manner prescribed by statute." But a like restriction, in words almost identical, was imposed by section 1, title 1, chapter 2, part 3 of the Revised Statutes (3 Bank's 6th ed., 326), and remained unaltered upon the statute book until it was displaced by the corresponding provision of the Code. Third. Section 77 of the act of 1837 gave the surrogate authority to issue commissions for the examination of witnesses in other States or countries. It will, of course, be conceded that powers no less ample, are now conferred by the Code. (See section 2538, making applicable for Surrogates' Courts, article 2 of title 3 of chapter 9, which relates to "depositions taken without the State for use within the State.")

I have thus demonstrated that if the decision in *Russell* v. *Hartt* is not to be taken as controlling my disposition of the principal matter here in controversy, it is for some reason quite apart from any supposed variations between those sections of the act of 1837, upon which the decision rests, and cognate provisions in the law as it stands to-day. But the parties opposing the probate of the alleged codicil insist that lack of jurisdiction in the Surrogate's Court to prove a testamentary paper not produced, and not sought to be established as lost or destroyed, is made apparent by reference to section 1861 of the Code. This section forms a part of article 3, title 3, chapter 15. The chapter is wholly concerned with certain special provisions regulating "*actions;*" the title is styled "*Actions* relating to the estate of a decedent;" the article is entitled "*Actions* to

to be based largely upon the ground of the extension of jurisdiction in the Surrogate's Court by the provisions of chapter 460 of the Laws of 1837. The objection was taken that except in a case where a will of personal estate duly executed in this State by a person not a resident of this State shall in the first instance have been duly admitted to probate in the court of a foreign State or country, no authority has ever been given to a surrogate to act on a will the original of which could not be produced before him.

establish or impeach a will;" the section provides that in certain specified classes of cases one may maintain an *action* to procure a judgment establishing a will. The first and second of these classes are described as follows: "Where a will of real or personal property, or both, has been executed in such a manner and under such circumstances that it might, under the laws of the State, be admitted to probate in a Surrogate's Court, but the original will," either (a) "is in another State or country under such circumstances that it cannot be obtained for that purpose, * * * " or (b) "has been lost or destroyed by accident or design." The third class is thus defined: "Where a will of personal property, made by a person who resided without the State at the time of the execution thereof, or at the time of his death, has been duly executed according to the laws of the State or country in which it was executed, or in which the testator resided at the time of his death, and the case is not one where the will can be admitted to probate in a Surrogate's Court under the laws of the State."

The language of the first part of the first and the last part of the last subdivision certainly seems to involve the notion that inability to produce a will because of its detention in another State or country operates to prevent its admission to probate in a Surrogate's Court, even though that court would else have undoubted jurisdiction in the premises. If, however, the statutes which confer upon the surrogate his authority in matters of probate contain no such restrictions and limitations as regards wills not produced in his court, but, on the contrary, are couched in terms sufficiently broad and general to justify him in taking the proofs of such instruments, it is plain, I think, that he is not to be ousted of his jurisdiction by mere inference and implication from words used by the legislature in conferring jurisdiction upon other tribunals. Suppose that among the cases specified in section 1861, as warranting the maintenance of an action to establish a will, was the case following: "Where a will has been executed under such circumstances that it might, under the laws of the State, be admitted to probate in a Surrogate's Court, *but*" such will is worded in the German language, or is written on blue paper; it could scarcely be claimed that such a provision would, of itself, deprive the surrogate of authority to take proof of wills written on blue paper, or of wills expressed in the German tongue. There is no such virtue in a *but.* And that "but" has no such virtue as it is employed in this section becomes manifest upon consideration of the last clause of its first subdivision — the clause relating to lost wills and wills that have been destroyed. The punctuation of the section is so faulty that upon a

The court held that the act is broad enough to cover the case, as it expressly authorizes the surrogate of each county to take proof of the wills of all deceased persons where the testator not being an inhabitant of this State shall die out of the State leaving assets in the county of such surrogate, and then restores the incidental powers of surrogates and authorizes them to issue commissions to take testimony, to foreign countries. The court further held that as the surrogate has the power to issue commissions to take testimony in

casual reading one may fail to note that that clause, like the one preceding, is connected with clause first by the word "but." (I have made that fact conspicuous by the insertion of the word "either" before the words "is in another State or country" in the foregoing quotation from the statute.)

The implication that procedure by acti on is the *only* procedure whereby lost and destroyed wills can be proved, and that Surrogate's Courts are, therefore, powerless in the premises, is no less definite and positive than the implcation that an *action* is the only proceeding for establishing wills detained in a foreign State or country and for that cause not producible. But there is not the slightest ground for supposing that the legislature or the codifiers intended that the provision which thus empowers courts of general jurisdiction to establish a lost or destroyed will should be taken as involving a denial of like authority to the surrogate. On the contrary, section 2621 of the Code, which went into operation simultaneously with section 1861, expressly provides that "a lost or destroyed will can be admitted to probate in a Surrogate's Court." And it would appear from Mr. Throop's note to section 1861 that the latter section does not embody an afterthought of the codifiers, but that when the phraseology of the earlier was under consideration the commissioners had in mind the extension to all Surrogates' Courts of that power of proving lost and destroyed wills which had been exercised by the surrogate of this county since 1870. That section 1861 should not receive the interpretation claimed for it by these contestants is apparent from another consideration. An examination of the statutes for which it has been substituted will show that those statutes furnished the appellant in *Russell* v. *Hartt*, with arguments against the authority there exercised by the surrogate, no less forcible than the arguments based in the case at bar upon the supposed restrictive language of the Code. Section 1861 is, in the main, a re-enactment with modifications of sections 63*a*, 68*a* and 63*b*, title 1, chapter 6, part 2, Revised' Statutes (3 Bank's 6th ed. 70, 71). Section 63*a* provided that "a will duly executed according to the laws of this State, where the witnesses to the same reside without the jurisdiction of this State, or a duly exemplified or authenticated copy thereof, where the original will is in the possession of a court or tribunal of justice in another country or State whence the same cannot be obtained, may be proved in the Court of Chancery, upon a commission to be issued for that purpose on application to the chancellor." Section 68*a* provided that "wills of personal estate, duly executed by persons residing out of this State, according to the laws of the State or country in which the same were made, may be proved under a

foreign countries, the issuance of such a commission makes the commissioners officers of the court for the purposes for which it was issued, and that in the execution of the authority conferred the commissioners stand in the place of and represent the court; and that the exhibition of an original will before them was substantially a production of the will before the court. In the case at bar the jurisdictional facts, although different, come under the same section of the act of 1837 as is mentioned in the case of *Russell* v. *Hartt.*

commission to be issued by the chancellor." Neither of these sections contains any express reference to the circumstance to which they both owe their origin — the lack of power in the Surrogate's Court of that time to issue a commission for the examination of witnesses without the State. Sections 63a–68a did not form a part of the Revised Statutes as originally enacted but were inserted afterwards. (Sec. 16, chap. 320, Laws of 1830.) In commenting upon their object and effect the revisers say: "There was no provision in the old statutes, nor is any contained in the new, relative to the proof of foreign wills. The above sections will remedy the omission in a manner which, it is believed, will be entirely safe." (5 Edm. St., 631.)

The sections here referred to continued in force uninterruptedly until their repeal in 1880, and that, too, without any modification except such as was occasioned by the abolition of the Court of Chancery, and the transference of its powers and jurisdiction to the Supreme Court. (Sec. 16, chapter 280, Laws of 1847.) That these sections lodged, first in the Chancery Court and thereafter in in its successor, exclusive jurisdiction of wills not producible because of their detention in a foreign tribunal, and of wills whose probate involved the examination of witnessess without the State, was strenuously urged before the Court of Appeals in *Russell* v. *Hartt*. But FINCH, J., pronouncing the court's opinion, expressly sanctions the contention of the respondents in that proceeding, that before the enactment of chapter 320 (*supra*), the Surrogate's Court had had jurisdiction to take proof of foreign wills, and continued to have it thereafter, but that this jurisdiction was "so hampered and rendered ineffectual, in cases where the witnessess could not be produced, by the inability of the Court to issue a commission, as to make necessary and occasion" the grant of authority to the chancellor. This view of the matter was very clearly and forcibly enunciated by Surrogate BRADFORD in *Isham* v. *Gibbons* (1 Brad., 69), cited with approval in *Russell* v *Hartt*. I am satisfied that there are no such differences between sections 63a–69a, as thus construed, and section 1861 of the Code, as to warrant the notion that, by the latter enactment, the legislature intended to hedge about the probate jurisdiction of the surrogate with restrictions such as had never theretofore been imposed. Counsel for the contestants lay some stress upon the direction contained in section 2635 of the Code, to the effect that except where special provision is otherwise made by law, a written will, after it has been proved, "must be retained by the Surrogate until the expiration of one year after it has been recorded * * * and must then be returned upon

Section 2476 of the Code seems to be substantially an equivalent to the section of the act of 1837 referred to in the case cited.

The decision, therefore, in the case above mentioned is distinctly to the effect that the production of an original will before commissioners appointed by the surrogate to take evidence, is substantially a production of the will before the Surrogate's Court, and, therefore, the provisions of the Code which appear to require the production of a will in any case before the surrogate are complied with by the

demand to the person who delivered it," etc. This provision has taken the place of section 54, title 1, chapter 6, part 2, of the Revised Statutes (2 Rev. Stat., 66), which declared that "all wills, whenever proved according to law, except such as are required to be deposited, shall, after being recorded, be returned upon demand to the person who delivered the same," etc. The language of section 2635 involves no stronger implication that the production of a will must precede its admission to probate, than is involved in the provisons above quoted from the Revised Statutes, and the latter provisions were in force when the will which occasioned the controversy in *Russell* v. *Hartt* was admitted to probate. It would be profitless to make detailed comment upon the result of comparing, section by section, the terminology of the Code with that of the various statutes which it has supplanted. To any person who will undertake that comparison, it will clearly appear that, both in spirit and in letter, the later enactments contemplate an expansion rather than a contraction of the authority of this Court. If there be any difference at all, therefore, between the present situation and that which existed at the entry of the decree in *Russell* v. *Hartt*, it is a difference which makes the decision in that case all the more controlling in this.

*Second.* The claim that this proceeding should be dismissed because the codicil, for whose probate it asks is unattested, rests upon a very slender foundation. I have already referred to the provisions of sections 2472 and 2476 of the Code of Civil Procedure, one of which gives to the surrogates of the State general authority to "take the proof of wills" and "to admit wills to probate," and the other of which specifies the cases in which that authority may be exercised in any particular county by the surrogate of such county. One of the cases thus specified is described as follows: "Where the decedent, not being a resident of the State, died within that county, leaving personal property within the State." The case at bar, assuming, as it must of course be assumed for present purposes, that the allegations of the petition are true, indisputably falls within that description.

Now, there is in the Code another section (sec. 2611) whose last five words are claimed to deprive surrogates of the power of proving any wills whatever except such as are attested by at least two subscribing witnesses. It is certainly the chief, if not the exclusive, purpose of the section referred to, to prescribe by what law, foreign or domestic, the validity of the execution of a will shall be tested. It substantially declares that a will of personal property shall be deemed suffi ciently executed in any of the following cases: First. Where it has been executed

production of the will before the commissioners appointed by the surrogate to take proof in reference to its execution. The case of *Younger* v. *Duffy* (*supra*), does not in any respect conflict with this view. The question there before the court was as to the jurisdiction of the Supreme Court to entertain an action to prove a will, the original of which remained on file in the archives of the notary's office at the city of Cadiz in Spain, from which the same could not by reason of the laws of Spain be taken for the purpose of

in conformity with the laws of this State. Second. Where it has been executed without the limits of this State, but in some other State of this country, or in the dominion of Canada or in the kingdom of Great Britain and Ireland, and according to the laws of the place of its execution. Third. Where it has been executed, not in conformity with the laws of this State but in conformity with the law of its maker's residence.

Section 2611 is, in the main, a mere recasting of chapter 118 of the Laws of 1876, a statute which was in force from the time of its enactment until the adoption of the Code of Civil Procedure. It must certainly be admitted on all hands that during this interval the personal property-will of a decedent, who resided at the time of its execution in any State or territory of this country, would have been admissible in a Surrogate's Court, despite the non-observance by the testator of the formalities of execution prescribed by our own laws, if he had duly observed the formalities of execution prescribed by the law of his domicile. Now there were, during that interval, at least ten of the States and two of the territories of the United States in which holographic wills that bore the name of no subscribing witnesses were entitled to probate; and such is the case to-day. Those States and territories are Arkansas, California, Dakota, Kentucky, Louisiana, Mississippi, Montana, North Carolina, Pennsylvania, Tennessee, Texas and Virginia.

If these contestants put a correct interpretation upon section 2611, an unattested holographic will, executed by a resident of any of those localities, must necessarily fail of probate in this court, for the reason that the only provision for probate in that section is a provision that a will may be proved " *as prescribed in this article* " (art. 1 of tit. 3 of chap. 18), and that in such article, as they claim, no procedure is established for proving testamentary papers unattested by witnesses. If the latter of these two contentions were strictly correct, it would not, in my judgment, follow that such wills must needs be rejected, unless in article 1 (*supra*), or elsewhere upon the statute book, there appears some provision which prohibits their probate in Surrogates' Courts. If general jurisdiction in the premises is lodged in those courts, and the legislature have neglected to point out the precise way in which that jurisdiction can be exercised, the surrogate is at liberty to adopt such modes of procedure as the exigences of the case demand. This would merely require a resort to the incidental powers with which he is vested by section 2481 of the Code. (*Isham* v. *Gibbons, supra;* *Pew* v. *Hastings*, 1 Barb. Ch., 452; *Brick's Estate*, 15 Abb. Pr., 12; *Tompkins* v. *Moseman*, 5 Redf., 402; *Kohler* v. *Knapp*, 1 Brad., 241; *Sipperly* v. *Baucus*, 24 N. Y., 46.)

being admitted to probate under the laws of the State of New York or for any other purpose whatsoever. The court simply decided that the fact that the will could not be obtained for production in the Surrogate's Court of Richmond county, gave the Supreme Court jurisdiction to entertain an action under the provisions of section 1861 of the Code of Civil Procedure. But it was not decided and it was not intended to be decided that the Surrogate's Court was deprived of jurisdiction to entertain proceedings for the probate of

---

In *Seaman* v. *Duryea* (10 Barb., 523), affirmed in the Court of Appeals (11 N. Y., 324), it was held that, although Surrogates' Courts were courts whose jurisdiction was derived altogether from the statutes, nevertheless "the authority to do certain acts or to exert a certain degree of power, need not be given in express words. If the authority may be fairly and reasonably inferred from the general language of the statute, or if it be necessary to accomplish its objects, and to the just and useful exercise of the powers which are expressly given, it may be taken as granted."

In *Campbell* v. *Logan* (2 Brad., 90), Surrogate BRADFORD said : " The Revised Statutes define the jurisdiction of the surrogate and direct its exercise ' in the cases and in the manner prescribed by the statutes of the ·State,' but the power to take the proof of wills being given generally, the mode of its exercise in a case not provided for by statute must be regulated by the court in the exercise of a sound discretion, according to the peculiar circumstances of each particular case."

But not only is it true that no statute forbids the surrogate to admit to probate an unattested will of personal property executed in accordance with the law of the testator's domicile; it is also true that the procedure established by article 1 (*supra*), does not pretend to relate exclusively to wills that have subscribing witnesses   Some of the provisions of that article, for example, sections 2618, 2619 and 2620, especially concern wills of that description, and prescribe under what circumstances subscribing witnesses must be examined and under what circumstances their examination may be dispensed with. But other provisions of the article are broad enough to include every species of will covered by the terms of section 2611. Section 2614 declares the requirements of the petition for probate. It contains no intimation of a limitation to attested wills. Section 2622 establishes as the only prerequisite for the admission of any will described in section 2611 that the surrogate shall "inquire particularly into all the facts and circumstances and be satisfied with the genuineness of the will and the validity of its execution." Section 2623 provides that " if it appears to the surrogate that the will was duly executed, and that the testator was in all respects competent to make it, and was not under restraint, it must be admitted to probate."

I am of the opinion that neither of the objections of these respondents is well taken. They must, therefore, be overruled.

the will, simply because the will itself was not produced before the surrogate of that county.

There is no evidence of any intention upon the part of the legislature by the enactment of section 1861 to deprive the Surrogate Court of any jurisdiction which it otherwise had, but simply to confer jurisdiction upon courts to entertain an action to procure a judgment establishing a will under certain circumstances. It would be a forced application of the rule of repeal by implication to hold that, because of supposed inconsistencies between the provisions of section 1861 of the Code, and the jurisdiction which the Surrogates' Courts had been accustomed to exercise, and which they would be undoubtedly held to have the right to continue to exercise were it not for these apparent inconsistencies, the jurisdiction of the Surrogate's Court had been thereby abridged. Full force and effect can be given to section 1861 without in any respect infringing upon that jurisdiction which had been recognized by the Court of Appeals to exist in Surrogates' Courts.

We are of opinion, therefore, that the order appealed from should be affirmed, with ten dollars costs and disbursements.

DANIELS and BARTLETT, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.