In the Matter of the Application for Letters of Administration of
the Goods, Chattels, etc., of CYNTHIA M. CAMERON, Deceased.

NERVA G. FARLIN and MAY FARLIN, by LOUIS M. BROWN, their
Special Guardian, Appellants.

THEODORE FARLIN, Petitioner, Respondent.

*Application for letters of administration — proof that a will of a resident of New
York was admitted to probate in Illinois — proof of the will in an action in the
Supreme Court.*

A petition for letters of administration in which a nephew and one of the next
of kin of the decedent alleges that she died "without leaving any valid last
will and testament to my knowledge, information or belief," is sufficient to
confer jurisdiction upon the surrogate to determine the question of intestacy.

Upon the hearing of an application for letters of administration upon the
estate of a decedent, who at the time of her death resided in the State of New
York and owned personal property situated therein, it appeared that instru-
ments purporting to be her will and codicil were executed in the State of New
York and that the executor named therein offered them for probate in the
State of Illinois where he resided and where the decedent had assets; that the
witnesses to the instrument were examined in the State of New York before a
commissioner, appointed by an Illinois court, and that the proceeding, which
appeared to have been *ex parte,* resulted in a decree admitting the will and
codicil to probate.

A duly exemplified copy of the decree of the Illinois court was put in evidence
before the surrogate together with certified photographic copies of the original
instruments and a transcript of the testimony relating to the execution of the
will and codicil, the admission thereof to probate and the issue of letters
testamentary thereon, and evidence was given that the original instruments
were upon file in the office of the Illinois court from which the statute of that
State forbade their removal.

The witnesses to the alleged codicil upon examination before the surrogate gave
testimony tending to show that the codicil was duly executed and that the
photographic copy produced was a *facsimile* of the original codicil, but the
subscribing witnesses to the will were not examined.

Subsequently the photographic copies of the alleged will and codicil and the
testimony of the witnesses given in connection therewith were stricken out by
the surrogate, who thereupon adjudged that the decedent died intestate, and
issued letters of administration upon her estate, stating upon the settlement of
the case that the evidence given before him did not satisfy him of the genuine-
ness of either the alleged will or codicil or the validity of their execution
under the laws of the State of New York.

*Held,* that the decree of the surrogate should be affirmed;

That the requirement that full faith and credit be given to the records and judicial proceedings of the State of Illinois was fulfilled by conceding the will and codicil to be valid in that State;

That the action of the surrogate in striking out the evidence which he did, while a technical error, was not a reversible error, it appearing that such evidence, if not stricken out, would not have changed the surrogate's finding of fact.

*Semble*, that the difficulty attending an attempt to probate the will in the State of New York, resulting from the inability to procure the originals, might be obviated in an action brought in the Supreme Court under section 1861 of the Code of Civil Procedure, in which action the court, by virtue of its general jurisdiction in equity, might adapt its procedure to meet the exigency.

APPEAL by Nerva G. Farlin and May Farlin, infants, by Louis M. Brown, their special guardian, and the said Louis M. Brown, as such special guardian, from a decree of the Surrogate's Court of Warren county, entered in said Surrogate's Court on the 22d day of May, 1899, adjudging that the decedent died intestate, and granting letters of administration upon her estate.

The proceeding was instituted upon the petition of Theodore Farlin, one of the next of kin of the decedent, alleging that Cynthia M. Cameron died in said county, an inhabitant thereof, February 2, 1898, " without leaving any valid last will and testament," possessed of personal property within the State of New York, of a value not exceeding $2,500, and stating the names and residences of her next of kin, among whom were these appellants, to whom citations were issued.    They appeared in the proceeding, and by their general guardian denied that Cynthia M. Cameron died without leaving any valid last will and testament, and alleged that she did leave a last will and testament and a codicil thereto duly executed, whereby she bequeathed a portion of her estate to them, or for their benefit, which will and codicil had been duly proved and admitted to probate by and in the Probate Court of the county of Cook in the State of Illinois, and that letters testamentary had been issued thereon by said court to the executor named in said will; that the said executor had duly qualified and was acting as such, and that said Probate Court had full jurisdiction in the premises.

Upon the trial of the issue thus raised of the intestacy of the decedent, the appellants offered in evidence a copy, duly exemplified according to the act of Congress, of a decree of the Probate Court

of Cook county, in the State of Illinois, admitting to probate certain instruments as and for the last will and testament and codicil thereto of Cynthia M. Cameron, photographic copies of which, certified to be *facsimiles* thereof, were annexed to said copy of the decree, together with a transcript of the recitals of the records of the court of the testimony relating to the execution of the will and codicil, of the admission thereof to probate and of the isssue of letters testamentary thereon to Lewis H. Davis as executor thereof, and of his qualification as such by giving the bond required by the court and taking the oath required by law. Evidence was given to the effect that the Probate Court named in the exemplified copy was and is a court of record, having general jurisdiction of all matters relating to the probate of wills, granting of letters testamentary, the care and settlement of estates left by decedents; that the original will and codicil were on file in the office of said Probate Court, and that the statute of Illinois requires that the original will shall remain on file in said office, and that the custodian thereof had refused to permit the same to be taken therefrom for production before the surrogate of Warren county.

It appeared that said instruments were executed in Warren county in this State; that the witnesses thereto resided in said county, and were examined there by a commissioner appointed by the Probate Court of Cook county, Illinois; that at the time of the death of the decedent, the instruments were in the custody of the executor, Davis, who resided in Chicago, Cook county, Illinois, and that the decedent had assets in Chicago, and that no proceedings to prove the alleged will and codicil have ever been instituted in Warren county.

The two witnesses to the alleged codicil testified before the surrogate of Warren county in this proceeding, that they had witnessed a codicil for Mrs. Cameron, and that they had been examined as witnesses thereto before the commissioner appointed by the Probate Court of Cook county, Illinois, who then produced the original codicil before them, and that they identified it, and. that the photographic copy now produced was a *facsimile* thereof; and they testified at length as to the execution and publication of the original by Mrs. Cameron. Their testimony tended to show the due execution of the codicil. The appellants then asked for a commission to take

additional testimony in Chicago as to the original instruments, their custody and the proceedings for their probate. The application was denied by the surrogate, and upon motion of the petitioner the surrogate struck out the photographic copy of the alleged will and codicil and the testimony of the witnesses given in connection therewith, and thereupon adjudged that the decedent died intestate and issued letters of administration upon her estate to Lydia M. Upson. The appellants duly excepted to these rulings of the surrogate. The surrogate upon the settlement of the case found that the evidence given in this proceeding did not satisfy him of the genuineness of either the alleged will or codicil or of the validity of their execution under the laws of this State.

*Louis M. Brown,* for the appellants.

*James C. Rogers,* for the respondent.

LANDON, J. :

In order to institute the proceeding it was necessary for the petitioner to prove presumptively " by affidavit or otherwise to the satisfaction of the surrogate," among other things, that " the decedent left no will." (Code Civ. Proc. § 2662.) Of course, that means no valid will. " The word 'intestate' signifies a person who died without leaving a valid will." (Code Civ. Proc. § 2514.) The verified petition stated the death of Mrs. Cameron " without leaving any valid last will and testament to my knowledge, information or belief." The petitioner was the nephew of the decedent, and one of her nearest of kin, and resided in the same county with her. Apart from this statute, testacy is not presumed, and, therefore, less evidence is necessary to prove intestacy presumptively. We think the petition sufficient to justify the surrogate in deciding that it gave him jurisdiction to inquire and determine what the fact is.

Upon the issue as to Mrs. Cameron's intestacy, the test was whether she left a valid will. The question being open for determination, manifestly the presumption in favor of intestacy continued until overcome by the evidence, since under our statutes the existence of a valid will cannot be presumed, but it must be shown to have been executed and published as prescribed by our statutes by a person having testamentary capacity.

Therefore, unless the evidence before the surrogate was such as would render it reasonably certain that upon an application for its probate it could be established, the surrogate might find that the decedent died intestate.

This situation was peculiar. The decedent was an inhabitant of the county of Warren in this State. She executed the alleged will and codicil there, died there, and left assets within this State. The person named as executor, instead of applying for the probate of these instruments to the domestic forum where all the evidence touching their validity was easily obtainable, took them to the distant forum of another State, where the opportunity to challenge their validity and defeat their probate was less favorable than in the domestic forum, and he procured probate there under the laws of that State. The proceeding in that State seems to have been *ex parte*. The decree recites that " due notice of the application for the proof of said will and codicil has been given as by statute required;" but what the statute requires was not shown, and there are no recitals of appearances. This proceeding instituted before the surrogate of Warren county in behalf of the next of kin was a direct challenge of the validity of the alleged will. It was not met by an application for probate. Of course, the next of kin do not ask its probate, and they cannot resist it before it is attempted. If the order appealed from should be reversed, the administratrix must be displaced. The will still remains unprobated, and it may be that the person named as executor in it will distribute all the assets according to its provisions. The fact that a foreign forum was sought and the domestic one avoided ; that the proceeding there was *ex parte ;* that the original instruments had been so placed that they could not be produced here, and that photographic copies were produced in their stead, and that no application to probate the instruments here had been made or proposed ; that witnesses were called as to the execution of the codicil, but not of the will, might, in the absence of explanation, suggest doubt to the surrogate. Such doubt, in connection with the statutes which prescribe the kinds of evidence which the surrogate may receive and consider upon the application to prove an existing written domestic will would naturally be strengthened.

While the record of the foreign court might be sufficient evidence

of the existence and validity of the will under the laws of Illinois and within that jurisdiction, it could be no substitute for the evidence which our statutes require to be produced before the surrogate in support of the probate of a domestic will.

The evidence adduced by the appellants was relevant to the issue of the existence of a will; strictly speaking, it was error to strike it out. But the surrogate expressly found, upon the settlement of the case, that the evidence given in this proceeding did not satisfy him of the genuineness of the alleged will and codicil or either of them, or of the validity of their execution, under the laws of this State. The record contains the evidence which he struck out, and, as he passed upon it, we may do the same (Code Civ. Proc. § 2586); and if we sustain his finding of facts, his error in striking it out is not reversible error, since, whether in or out, the result would be the same.

Full faith and credit must, of course, be given by this State to the records and judicial proceedings of the State of Illinois, and that is done by conceding the will and codicil to be valid in that State. The laws of that State do not give or attempt to give them further force. If the will had been executed in that State we should be governed by its laws in determining the validity of its execution. (Code Civ. Proc. § 2611.)

Could the will be probated here if it could not be produced, its existence being known? The implication of the 1st subdivision of section 1861 and of section 2620 of the Code of Civil Procedure is that the surrogate cannot admit such a will to probate. The courts, however, have held that wills executed in other countries, which might be admitted to probate here if produced, may be proved before the surrogate upon evidence taken upon commission, the will being produced before the commissioner and the witnesses thereto, and such witnesses giving their testimony as to the original will thus produced. Such a production is held to be a production before the court in the person of its commissioner. (*Russell* v. *Hartt*, 87 N. Y. 19; *Matter of Delaplaine*, 45 Hun, 225.) As the witnesses to these instruments reside in this State they must be examined here. A commission would not enable the surrogate or the commissioner or parties to confront them with the will itself.

The difficulty could, perhaps, be overcome in an action in the Supreme Court under section 1861. (*Younger* v. *Duffie*, 94 N. Y.

535.) That court, by virtue of its general jurisdiction in equity, could, no doubt, adapt its procedure to meet the exigency. If so, no reason is suggested why such an action may not now be brought, and, if successful, be followed by vacating the letters of administration. But we cannot say upon the evidence that the will could stand the test of a rigid inspection or that the Supreme Court would probate it.

The difficulty with the case is, that if the letters of administration be now vacated, the laws of this State may possibly be circumvented by the practical administration of the estate under a will which, if valid, ought to be established according to our laws, and if not valid, should not be made effectual by indirection; and we are not disposed to set such a precedent.

The decree of the surrogate is affirmed, but without costs.

All concurred.

Decree of the Surrogate's Court affirmed, without costs.