S. Samuel Di Falco, S.
The Government of British Honduras, which was granted permission by the Court of Appeals to intervene in the pending probate proceeding (8 N Y 2d 311), moves to dismiss the petition for probate of the will on the ground: first, that this court has no jurisdiction to entertain the proceeding, or second, if it has jurisdiction, that it should decline, in its discretion, to exercise it. The moving party requests a hearing on the matter of the decedent’s domicile and the situs of his property.
The decedent died on November 15,1955 in British Honduras. Almost two and one-half years later — on April 23, 1958, a petition was filed in this court for the probate of an instrument dated November 12, 1955 which is alleged to have been “ destroyed after the testator’s death.” That petition contains the further allegation that the decedent was, at the time of his death, “ a resident of the City of Belize, British Honduras, Central America”. The petition was amended on June 11, 1958 by a supplemental petition in which the petitioner set forth transactions and proceedings with the New York State Tax Commission wherein the petitioner was advised of the commission’s contention that the decedent had been a resident of this State. The petition was thereupon amended to read “ that the decedent, at the time of his death, was either a resident of the County of New York, State of New York, or a resident of the City of Belize, British Houndras, Central America.”
At this point it should be noted that section 249-t of the Tax Law requires that in every proceeding for original letters testamentary in the estate of a nonresident decedent, the State-Tax Commission must be cited as a necessary party. The section contains other provisions to protect the State’s interest with respect to the collection of any tax that might be payable. The petition herein having been amended so as to leave open the question of the decedent’s domicile, the State Tax Commission is taking no active part in the probate proceeding. It is obvious, therefore, that the amendment of the petition represents not so much a change of mind on petitioner’s part but rather an effort to avoid at this time unnecessary litigation.
*98 It is true that the parties are not all in agreement respecting the decedent’s domicile. Two of the contestants allege that he was domiciled in British Honduras. The Attorney-General of the State of New York and a special guardian of infant parties allege New York domicile. However, no person claiming New York domicile desires at this time to litigate domicile as a preliminary issue in the probate proceeding. This court would have jurisdiction whether decedent was domiciled here (Surrogate’s Ct. Act, § 45, subd. 1) or being a nonresident, he died without the State leaving personal property within this county (id., subd. 3). This court heretofore said in ruling upon a motion for a preliminary trial of domicile: ‘ ‘ The attorney-general appears to be the only party to the proceeding contending that the deceased died a resident of this county, and he joins in opposition to the motion stating that the question is not relevant to the matters in controversy as to the validity of the paper propounded as the decedent’s last will. The court concurs in this conclusion and holds that the moving party has failed to demonstrate the necessity for determination of the issue of domicile at this time.” (N. Y. L. J., Jan. 18,1960, p. 14, col. 3.)
A trial of the preliminary issue would be expensive and dilatory. Inasmuch as this court would have jurisdiction in any event, at least insofar as property in New York is concerned, the parties have long ago reached the point where they are anxious to try the important basic question, that is, the genuineness and validity of the propounded instrument. The moving-party, on the other hand, apparently prefers to delay the trial here until the matter can be tried in British Honduras, where the proceeding- is moving along at a leisurely pace.
In challenging the jurisdiction of this court to entertain the probate proceeding, the motion papers nonetheless concede that the gross assets owned by the decedent at the time of his death ‘ ‘ had a value of over $3,500,000 and such assets are held in custody as follows: British Honduras — over $500,000; State of New York — over $1,800,000; State of Illinois — over $700,000; Province of Quebec, Canada —• over $500,000.” The moving-party alleges, however, that the decedent left no real or tangible personal property in New York, that his intangible personalty in New York consists of “ several bank or brokerage accounts ” and stock certificates of a number of corporations, “ a great majority of which were organized outside the State of New York.” The moving party requests a preliminary trial to determine the situs of the assets taken into custody by the Public *99 Administrator of the County of New York, as temporary administrator of the decedent’s assets.
This motion is purely dilatory. The temporary administrator appointed by this court has submitted a report to the court on this motion in which he states that a New York brokerage firm was indebted to the decedent in the sum of $73,177.58, there was on deposit in a bank $6,343.39, another firm owed the decedent $10,566.07, and there were securities valued at $1,532,692.87, most of them in street names, all physically located in New York County. All of the securities have been sold by the temporary administrator, pursuant to the provisions of section 127 of the Surrogate’s Court Act, and the proceeds have been invested in bonds of the United States, the State of New York and the City of New York, all of which are held by the fiduciary under the supervision of this court.
Insofar as the motion seeks a hearing to determine the situs of the securities left by the decedent, it is denied. The property in the hands of the temporary administrator not only has a situs within the County of New York, but is actually being administered under the supervision of this court and is actually and physically before this court.
It is argued by the moving party that the authority of this court to entertain a proceeding for the probate of the will of a nonresident is limited to those estates where no original probate or administration proceeding is pending at the domicile. In the discussion of the question of jurisdiction of this court, we must assume, without deciding the point, that the decedent was domiciled in British Honduras. In this estate, a probate proceeding is pending in British Honduras, which, for convenience, we shall refer to as the domicile.
The authority of the Surrogate to grant probate of a foreign will, was recognized long before the enactment of any statute governing ancillary probate. (Isham v. Gibbons, 1 Bradf. 69, 76; Russell v. Hartt, 87 N. Y. 19, 24.) Surrogate Bradford found precedents extending back to the time of Lord Cornbury in 1708. There was reference in the Act of 1830 (L. 1830, ch. 320, § 16) to proof of foreign wills (see Revisers’ Notes, 3 Rev. Stat. of N. Y. [2d ed.], p. 634), but these provisions did not relate exclusively to wills of nonresidents, and were equally applicable to domestic wills where the witnesses were outside the State at the time of probate (Moultrie v. Hunt, 23 N. Y. 394, 406). There was some reference to proof of foreign wills in enactments in 1840 and 1863 (L. 1840, ch. 384; L. 1863, ch. 403), but the first extensive treatment of “ Foreign Wills ” was in the Code of Civil Procedure of 1880 (ch. 18, tit. 3, art seventh; *100 Throop’s Annotated Code of 1881, § 2694 et seq.). These provisions later found their way into article 9 of the Surrogate’s Court Act (§§ 159, 161 et seq.) and are the source of much of the moving party’s argument that the power and authority of the Surrogate over the probate of foreign wills has been limited by the Legislature.
It is important to bear in mind that the provisions of the code, and those of the earlier and later statutes, govern the issuance of ancillary letters testamentary, or we might say, the ancillary probate of foreign wills, and that the general power and authority of the Surrogate over the probate of foreign wills long antedated any of these statutes. The special statutory provisions governing ancillary probate must be read in connection with the general statutes which specify the wills which may be probated and the procedure governing such probate, and also in connection with the long-established authority of the Surrogate to probate wills, domestic and foreign. However, as construed by the courts, the special statutes governing ancillary probate or ancillary letters testamentary do limit the authority of the Surrogate’s Court in one important respect.
The leading case is Matter of Connell (221 N. Y. 190, 195). In that case, the Court of Appeals, construing section 2695 of the Code of Civil Procedure (from which present section 159 of the Surrogate’s Ct. Act was derived), said that it “ provides a complete scheme for establishing within the state wills duly probated in other countries. New York has elected to give effect to such a decree, admitting a will of personal property to probate.” Referring to that section of the code and to section 23 of the Decedent Estate Law, the court said: “ Reading these sections together, where a petition is presented by a person interested in the estate showing the death of a non-resident, the execution of the will and the presence of personal property within the surrogate’s jurisdiction, it is the duty of the surrogate to admit such will, if properly executed, to probate in this state, unless it also appears that such will has been duly admitted to probate elsewhere. The burden of showing such fact is upon the party objecting to the probate.” Note might be made in passing, that the section was later amended to include a case where the will “ was established ” abroad, as well as one where there was a formal decree of probate (L. 1914, ch. 443), this later amendment having been made “ because sometimes, in a foreign country, wills are not probated, but are established by a procedure peculiar to that country.” (Report of Commission to Revise the Practice and Procedure in Surrogates’ Courts, 1914, § 2629, p. 156.) That amendment is of no significance here *101 because the practice in British Honduras is similar to ours in respect to probate.
It, therefore, seems quite clear that under the policy expressly declared by the Legislature of this State in sections 21 to 24 of the Decedent Estate Law, a will of a nonresident may be admitted to probate in this State if it complies with the requirements of one of those sections, and if there is property here. Without limiting the right of probate to any such will, a limitation in a procedural aspect has been implied from the text of section 159 of the Surrogate’s Court Act (and its predecessor statutes), namely, that in an estate where the will has been duly admitted to probate in the testator’s domicile, that will must be accepted for ancillary probate here, without the right of independent contest here. Such a limitation upon the original probate of foreign wills is imposed in a number of States. (See Hopkins, The Extraterritorial Effect of Probate Decrees, 53 Yale L. J. 221; Uniform Probate of Foreign Wills Act of 1950, § 1; 9-B Uniform Laws Ann., p. 391). The rule does not generally go so far, however, as to prohibit original probate in a case where a probate proceeding is still being contested in the domicile. (See Uniform Laws Ann., supra, § 2.) Nor does the general rule prohibit regular and original probate in a case where the domicile has rejected the will on the ground of formal invalidity. (Id. 53 Yale L. J., supra, p. 268.) No declaration of policy of this State, express or implied, has limited the authority of the Surrogate to entertain original probate of a foreign will in a case where the domicile has not admitted the will to probate.
There is no real dispute over the nature of the proceedings which have been conducted in British Honduras. According to the allegations in the probate file, which are also alleged with somewhat greater particularity in the present moving papers, a will dated May 10, 1918 was offered for probate in British Honduras. It was admitted to probate “ until a later Will be found”, and letters of administration with the will annexed were granted to one of the beneficiaries thereunder, for a period of 12 months or until a later will is found whichever event shall first occur. The letters have been extended and presumably are still in force. A formal proceeding was instituted in the Supreme Court of British Honduras, Probate Side, to have these letters revoked and to admit to probate the alleged lost will dated November 12, 1955. In that proceeding the person to whom the letters had been issued counterclaimed for the probate of the 1918 will. The trial of the proceeding in British Honduras was completed, but was reopened for further testi *102 mony. An appeal from that decision was taken to the Privy Council in England, and the appeal is still pending and undetermined.
In its brief, the moving party characterizes the probate of the 1918 will as ‘‘ probate in common form”. That would appear to be an accurate characterization of it, but whatever it may be called, it is clear upon the record herein that the probate of the 1918 will was not a probate in solemn form, that the later proceeding brought formally before the court in British Honduras all matters relating to the validity and effect of the two wills and that no final decree determining the effectiveness of either will has been rendered in British Honduras.
On this record, therefore, it cannot be said that this court lacks jurisdiction to entertain the probate proceeding and that, as matter of law, the proceeding must be dismissed.
Thus far we have considered only the power and authority of this court to proceed with the probate of the alleged will. The moving party also requests the court to dismiss the petition in the exercise of its discretion. This court heretofore denied a motion by one of the respondents to dismiss the probate petition (N. Y. L. J., Aug. 20, 1958, p. 2, col. 6). Since that time there have been numerous proceedings herein and a great amount of preparation for trial. Indeed, except for the moving party herein, the trial of the fundamental issues would have been completed by now. What has transpired since the last decision serves to confirm that decision. The Attorney-General of this State opposes the present motion. This decedent died more than five years ago. Contrary to the usual practice in this court, the actual trial of the probate proceeding has not yet started. No one can assert when the trial in the domicile can proceed. No one can predict the result. No one can say whether a final decree in the domicile will be on a ground that would prevent independent contest here. No one can say how long final decision will be delayed. Since the prior decision of this court refusing to dismiss the proceeding, there have been substantial litigation and extensive services by counsel herein. To remit all parties to another forum at this point “ after all these advances and retreats, these reconnaissances and skirmishes would be a postponement of justice equivalent to a denial.” (Matter of Raymond v. Davis, 248 N. Y. 67, 72.) The motion is, therefore, in all respects denied. Submit order on notice accordingly.
(April 5, 1961.)
A formal order has been submitted specifying a single question of fact to which the attornev would limit the hearing here *103 tofore directed by this court. It is unnecessary for this court to order itself to hear the issues of fact or to limit the issues as herein attempted. A challenge has been made to the status of the party intervening herein, and according to the usual practice of this court, a hearing on the question of status will be held. That hearing will be concerned with the questions argued in the numerous affidavits. The issues of fact may be stated generally as (1) whether the Government of British Honduras has the legal capacity, in its own name and in its own behalf, to institute, maintain and defend a proceeding in a court in the United States; (2) whether the Acting Governor General has power under his letters patent to authorize the institution, maintenance or defense of a proceeding in a foreign court; (3) whether the proper party is the United Kingdom of Great Britain or some officer thereof. At that hearing the court will also consider all questions of law raised by any party. The proposed order does not correctly state the matter in issue and will not be signed.