In the Matter of the Application of KATE V. K. BRUNS for an Order for Allowance for Support from Trust Funds.

Supreme Court, Onondaga County, October 4, 1935.

*Hancock, Dorr, Kingsley & Shove* [*Morris Berman* of counsel], for the petitioner.

*Edmund Porte,* special guardian, for infants respondents John F. Bruns, Katherine V. Bruns and Richard von Kloster Bruns.

*Hiscock, Cowie, Bruce & Lee* [*Maurice Lane* of counsel], for First Trust and Deposit Company, appearing specially and objecting to the jurisdiction of the court.

DOWLING, J. Petitioner, Kate V. K. Bruns, is the widow of Frederick V. Bruns, who died in Syracuse, N. Y., February 27, 1935, leaving him surviving four children, Frijs Anne Bruns Eaton, John F. Bruns, Katherine V. Bruns and Richard von Kloster Bruns. The three last named are infants between the ages of fourteen and twenty-one years.

On May 31, 1928, Frederick V. Bruns entered into a life insurance trust agreement with the City Bank and Trust. Company of Syracuse, N. Y., as trustee, wherein and whereby the said Frederick V. Bruns deposited with said trustee certain policies of life insurance with the provision that the proceeds thereof, upon the death of the grantor or upon maturity of said policies, be invested by the trustee and the income thereof paid over in quarterly installments each year, together with so much of the principal as the trustee should deem necessary for the support and maintenance of petitioner and, upon the death of petitioner, the trust fund was to be divided into four equal shares to be distributed to the children of Frederick V. Bruns in accordance with the terms contained in said agreement.

Upon the death of Frederick V. Bruns, respondent First Trust and Deposit Company, as successor to the City Bank and Trust Company, as trustee under said trust agreement, collected the sum of $73,386.72 as the proceeds from the life insurance policies deposited with said trustee by Mr. Bruns.

Frederick V. Bruns, at the time of his death, was indebted to the First Trust and Deposit Company, directly and indirectly, in the sum of approximately $65,873.47, and First Trust and Deposit Company claims to hold an assignment, executed by Frederick V. Bruns, of the proceeds of said life insurance policies in an amount equal to the indebtedness of Mr. Bruns to First Trust and Deposit Company. Said claim and assignment are in dispute and an action is now pending in the Supreme Court of Onondaga county relative to the claim of the First Trust and Deposit Company.

The First Trust and Deposit Company, as trustee, has in its possession the sum of $7,513.25, which it is holding under the terms of said trust agreement, and which sum is not subject to any claim by said trustee or any other person.

Petitioner is the sole support of the above infants, except John Bruns, who is partly self-supporting. Said infants reside with petitioner in the city of Syracuse, N. Y. Petitioner receives $100 per month as president of Bruns Co., Inc., an insurance agency in Syracuse, and $11 per month from the trustee herein. Petitioner has no other property or source of income.

Petitioner alleges that to properly support herself and dependent children, it is essential that she receive from the trustee herein $250 per month.

Prior to August 28, 1935, petitioner requested the trustee to pay her, out of the trust estate, the sum of $250 per month for the purpose aforesaid, which the trustee refused to do.

Subdivision (a) of paragraph third of the trust agreement provides that, in the event the income from the trust fund is not sufficient to adequately provide for the proper care and maintenance of said Kate V. K. Bruns, taking into consideration her other resources, the trustee shall pay over to her, from the principal of said trust fund, so much thereof as the trustee in its discretion shall deem to be necessary for that purpose.

Upon the refusal of the trustee to comply with petitioner's demand, and on August 28, 1935, petitioner instituted this proceeding " for an order directing and permitting the First Trust and Deposit Co., as trustee under the trust agreement entered into by Frederick V. Bruns, dated May 31, 1928, to pay over to Kate V. K. Bruns the sum of Two Hundred and Fifty Dollars ($250.00) monthly from the principal of said life insurance trust fund now in the

possession of said trustee and for such other and further relief as may be just and equitable in the premises."

The matter came on for hearing September 16, 1935. The infants appeared by special guardian, appointed by Hon. EDWARD L. ROBERTSON, Justice of Supreme Court, September 21, 1935. The trustee appeared specially and objected to the jurisdiction of the court and asked for a dismissal of the proceedings on the ground that the relief sought could be obtained, if at all, only by suit in equity. No answers or answering affidavits have been presented by the trustee or the special guardian. The allegations of the petition, therefore, must be accepted as true.

The trust before the court is " an express trust." (*Kokusai Kisen Kabushiki Kaisha* v. *Argos Mercantile Corp.*, [C. C. A. N. Y.] 280 Fed. 700, 702; *Central Trust Co.* v. *Gaffney*, 157 App. Div. 501; *Matter of Bogan*, 129 Misc. 119.) The court had no part in the creation of the trust. It is a private affair. Only upon the happening of certain contingencies does the Supreme Court become interested as provided in section 20 of the Personal Property Law: " When trust vests in supreme court. On the death of a last surviving or sole surviving trustee of an express trust, the trust estate does not pass to his next of kin or personal representative, but, if the trust be unexecuted, in the absence of a contrary direction on the part of the person creating the same, it vests in the supreme court and shall be executed by some person appointed by the court, whom the court may invest with all or any of the powers and duties of the original trustee or trustees." This section does not authorize the court to interfere with the administration of such a trust while in the hands of the original trustee. Nor does article IV of the Real Property Law, which relates exclusively to express trusts involving realty, confer any such authority. This conclusion leads to the inquiry, when, if at all, the court may exercise jurisdiction over such trusts in relation to situations not provided for by section 20 of the Personal Property Law and how it will be moved to the exercise of such jurisdiction. The answer to this query can be made only by an analysis of the jurisdiction and powers conferred upon the Supreme Court and their source.

The Supreme Court had its origin in a statute passed by the Legislature of the Colony of New York, May 6, 1631, which provided: " That there shall be held and kept a Supreame Court of Judicature * * * which Supream Court are hereby fully Impowered and Authorized to have Cognizance, of all pleas, Civill Criminall, and Mixt, as fully and amply to all Intents & purposes whatsoever, as the Courts of Kings Bench, Comon Pleas, & Exchequer within their Majestyes Kingdome of England, have

or ought to have." This statute was continued by Colonial act or Royal ordinance until the adoption of the first Constitution of the State of New York. (Colonial Laws, vol. 1, chaps. 1–5; *Matter of Steinway*, 159 N. Y. 250.)

The Court of Chancery was created by the same act as the Supreme Court of the Colony of New York. The first Constitution of New York, 1777, recognized the existence of the Supreme Court and the Court of Chancery as did the second Constitution of New York. The Constitution of 1846 abolished the Court of Chancery and enacted that there should be a Supreme Court having general jurisdiction in law and equity, and such is the case under the present Constitution. Section 64 of the Civil Practice Act provides: " General jurisdiction of supreme court. The general jurisdiction in law and equity which the supreme court of the state possesses under the provisions of the constitution includes all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery in England on the 4th day of July, 1776; with the exceptions, additions and limitations created and imposed by the constitution and laws of the state. Subject to those exceptions and limitations the supreme court of the state has all the powers and authority of each of those courts and exercises the same in like manner."

The Court of Chancery of England has its roots in the *Curia Regis* or King's Court of which the chancellor was one of the principal officials and the keeper of the great seal. Often the King heard suits in person as did Henry II. The growth of the business of the *Curia Regis* increased the dignity of the chancellor who became the head of a department called " The Chancery." The chancellor assisted in the judicial business both of the Exchequer and the *Curia Regis*, and acted as an itinerant justice. In 1199 the departments of the Exchequer and the Chancery were separated, and a separate set of rolls — The Chancery Rolls — began in 1340. The Chancery was mentioned as a court along with courts of common law. (14 Edw. III, St. 1c.5.)

The King, considered as the immediate minister of justice under God, was sworn at his coronation to deliver to his subjects " *æquam et rectam justitiam*." This he could not always do if he followed " mere law." Therefore, he had to reserve to himself, or confer upon others, a certain sovereign and permanent power to supply the want and correct the rigor of " that positive or written law, which of itself neither is, nor can be made such a perfect Rule, as that a man may thereby truly square out justice in all cases that may happen." Gradually the chancellor relieved the sovereign of

his judicial duties and dispensed justice in his place. During the fifteenth century the Chancery took jurisdiction of matters that fell outside the pale of the common-law courts.

In 1468 the following entry was made on the " Close Roll " on handing the seal to KIRKHAM, M. R.: " the King willed and commanded  *  *  *  that all manner of matters to be examined and discussed in the Court of Chancery, should be directed and determined according to *equity and conscience and to the old course and laudable custom of the same Court,* etc." (p. 406.) From the early years of the sixteenth century, Chancery had become a separate court " possessed of both a Common Law and an equitable jurisdiction," the latter being by far the most important. In 1545 was begun the regular series of decrees and order books and the equitable jurisdiction of the court was becoming settled. In the latter half of the seventeenth century cases decided by the Court of Chancery were recorded and cited as authorities. By 1621 the court had equal, and in some respects superior, authority to courts of common law, which fact " assured the free and continuous development of equity." By the beginning of the nineteenth century the| principles of the equitable jurisdiction of the Court of Chancery became fixed. Among the subjects cognizable by the court were " trusts and powers " and the rights of infants. (History of English Law, Holdsworth, vol. I, p. 466.) It was this equitable jurisdiction that was conferred upon the Supreme Court of this State.

According to Holdsworth (Vol. IX, p. 379), in the sixteenth and early seventeenth centuries, in the Court of Chancery, the first pleading of the plaintiff was the " Bill " which was " a declaration in writing showing the plaintifes griefe, and the wrong which he supposeth to be done unto him by the defendant, and what damages he sustaineth by occasion thereof, *praying process against him for redresse of the same.*" (Italics the court's.) Upon this bill a writ of subpœna was issued, directed to the defendants commanding them to appear before the court on a certain day. " The defendant must then appear and get an office copy of the bill." " Having obtained this copy, the defendant must decide whether he would demur or plead or answer." (Holdsworth, vol. IX, p. 340.) The subpœna was comparable to our summons and the bill to our complaint. Relief in equity was not obtainable in a proceeding instituted by petition except in a few instances provided by statute.

Clear it is that the Supreme Court of this State has the power to compel the trustee of a trust of the character in question to discharge his duties agreeable to the trust.

In *Matter of Van Zandt* (231 App. Div. 381), Mr. Justice EDG-COMB said (at p. 384): " Where a trustee has been given freedom to

act according to his own judgment in matters pertaining to another, and he fails, in the opinion of the court, to exercise such discretion in a proper manner, he may be compelled to do that which the trust fairly requires him to do." In *May* v. *May* (167 U. S. 310) Justice GRAY said: " The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed," and citing with approval as pertinent the case of *Uvedale* v. *Ettrick* (2 Ch. Cas. 130, decided by Lord Chancellor NOTTINGHAM in 1682).

In *People* v. *Norton* (9 N. Y. 176, 178) Chief Judge RUGGLES said: " The court of chancery had general jurisdiction of all cases of trust; and had the power by its general authority, independent of any statute, to displace a trustee on good cause shown, and to substitute another in his stead. It is said that this must in all cases, according to the course and practice of that court, be done by bill and not upon petition." " Bill " is a complaint in a suit in equity. (Ballentine Law Dict. [1930] p. 151.) " A judicial proceeding in a court exercising equity powers is called a suit. A proceeding in a court of common law, on the other hand, is called an action. A suit in equity is regularly begun by the filing of a bill. This is nothing more than a petition for relief addressed to the court by the party seeking relief and stating the facts on which the claim for relief is based." (10 Ruling Case Law, § 158, p. 408.) Section 8 of the Civil Practice Act provides: " There is only one form of civil action. The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished." Section 6 of the Civil Practice Act provides: " The term ' civil action ' means any action except an action prosecuted in the name of the people of the state as plaintiffs against a party charged with crime." A civil action is commenced by the service of a summons which is a mandate of the court. (Civ. Prac. Act, § 218.)

In the Chancery practice, even when application was made " for the protection of an infant's interests, it was commonly made by bill." (*Matter of Federman,* 149 Misc. 4, 9, and cases cited.) In *Matter of Van Wyck* (1 Barb. Ch. 565 [1846]) the chancellor said (at p. 567): " Independent of any statutory provisions on the subject, this court has no power, upon a mere petition, to discharge a trustee, or to accept his resignation and to appoint another in his place, without the consent of all persons who now are, or who upon any future contingency may be interested in the execution of the trust. The usual course of proceeding for the purpose of changing a trustee, is by bill, to which bill all persons interested are either actually or constructively made parties." In *Matter of Livingston* ([1866]

34 N. Y. 555) Judge MORGAN said (at p. 569): " As a general rule, petitions can only be presented in an action already commenced, or in a matter over which the court has jurisdiction by some act of the legislature or other special authority. Under the English statutes sundry cases of trust were provided for, in which a remedy might be had by petition; but the courts uniformly held that the remedy could not be extended by construction to include other cases." In *Matter of Empire Trust Co.* (123 Misc. 673) the petitioner was appointed to complete the execution of an express trust of personal property upon the death of the trustee, pursuant to section 20 of the Personal Property Law. The trust terminated and the petitioner rendered an account of its proceedings and, on notice of motion to the parties interested, asked for an order approving its account. Mr. Justice TIERNEY in denying the application said (at p. 674): " The relief asked for is that which would be obtained in the usual action for a judicial settlement of the account of a trustee in which jurisdiction to render a judgment binding on the interested parties would be acquired by service of a summons. As the court has not acquired such jurisdiction, and the order is not sought in any action pending before the court, and there is no statutory authority for a special proceeding in this court to judicially settle the account of a trustee upon the termination of the trust, the petitioner supports its application upon the contention that the general supervisory jurisdiction of the court over matters relating to the administration of trusts gives it inherent power to constitute a special proceeding for the judicial settlement of a trustee's account without statutory authority. There is no requirement that the court should constitute or exercise such a power by any necessity to do so in order that its jurisdiction should be exercised. The petitioner seeks by motion to obtain the identical relief that is open to it by a time-honored form of action." ·

The case of *Hill* v. *Hill* (124 Misc. 102, 104), relied upon by petitioner, is distinguishable. The trust in the *Hill* case arose out of an action in the Supreme Court. The judgment in that action provided: " It is expressly understood and agreed that the court may and shall enter judgment according to the stipulations of this agreement and shall make and enter any further order from time to time for the better carrying out of the plans and purposes of this settlement."

" In addition to their general and inherent jurisdiction over trusts and actions to establish and enforce the same, courts of equity have the right to execute a supervisory control over trustees," even to compel a trustee to exercise discretion where he fails to honestly and fairly exercise same. (65 C. J. § 538, p. 676; *People*

*ex rel. Murphy* v. *Kelly*, [1879] 76 N. Y. 475, 491; *Hughes* v. *Cuming*, 165 id. 91, 96; *Collister* v. *Fassitt*, 163 id. 281, 290.) A petition to the law side of the court, asking for the exercise of these powers, is futile. All interested parties may petition a court of equity to exercise its powers and it will do so. (*Matter of Van Wyck, supra*, 568.)

The instant trustee does not join with the petitioner and does not ask for any advice or protection from the court. So far as appears in the moving papers, there is no ambiguity in the trust instrument. The duty of the trustee is plain. Under such circumstances, if the trustee should ask for advice or direction, the court would render neither. (*Holland Trust Co.* v. *Sutherland*, 177 N. Y. 327, 329; *Matter of Ebetts*, 139 Misc. 250, 253; *Matter of Wander*, 141 id. 584, 585; *City Bank Farmers Trust Co.* v. *Smith*, 263 N. Y. 292, 295.) Where a trustee is appointed by the court and controversies arise between him and others as to the nature and extent of his authority, or as to the title, possession or control of the property claimed to be affected by the trust, the court will aid in determining the *controversy upon the institution of a proper action.* (*Coe* v. *Beckwith*, [1860] 31 Barb. 339, 341; *Matter of Waring*, 99 N. Y. 114.) In any event the validity of a trust will not be decided on a mere motion. (*Matter of Gueutal*, 97 App. Div. 530, 531.)

Upon the undisputed facts the trustee appears to be remiss in its duty towards petitioner. Notwithstanding this fact, the court is powerless, in this proceeding, to compel the trustee to discharge its duty under the trust. The only remedy is a suit in equity. This has been the rule for centuries both in England and in this State. There is no need now to devise a new formula under the power given in subdivision 3 of section 63 of the Civil Practice Act.

The preliminary objection is sustained and the proceeding is dismissed, without costs. Enter order accordingly.